Appeal from Third District.

# FURKOVICH v. BINGHAM COAL & LUMBER CO.[1]

## No. 2593.   Decided August 14, 1914 (143 Pac. 121).

1. NEGLIGENCE—INFERENCE FROM FACTS. It is enough to show that while defendant's employé was shoveling a load of coal from a wagon on a roadway, on the side of a mountain, near the edge of a sharp incline, a piece of coal rolled down such incline, injuring plaintiff, negligence being inferable therefrom. (Page 92.)

2. NEGLIGENCE—FAILURE TO OBVIATE DANGEROUS CONDITION. The principle that where a dangerous condition is easily obviated or rendered harmless, failure to do one or the other may be considered in determining the question of negligence applies where one, on a road on a mountain side, shovels coal from a wagon near the edge of a steep incline, without placing any barrier to prevent any pieces going down the incline.[2] (Page 94.)

3. TRIAL—INSTRUCTIONS—REQUESTS. A requested charge in a negligence case that one is only required to "exercise ordinary care," or "reasonable care," in "doing a thing," though abstractly correct, not being applied to the facts, so that it could impart no practical information to the jury, its refusal is not error. (Page 96.)

4. NEGLIGENCE—PROXIMATE CAUSE—NATURAL AND PROBABLE CONSEQUENCES. One who permits a piece of coal to roll down a steep mountain side at the foot of which, 200 feet below, are a number of inhabited dwellings, is liable for injury to one of such inhabitants as a natural and probable consequence of his act; it being unnecessary that the particular injury could have been anticipated.[2] (Page 97.)

Appeal from District Court, Third District; *Hon. C. W. Morse,* Judge.

Action by Joe Furkovich against the Bingham Coal & Lumber Company.

[1] See note to the reported case in 80 Central Law Journal No. 6 at p. 112.

[2] *Swan* v. *Railroad*, 41 Utah 518; 127 Pac. 267.

[3] *Stone* v. *Railroad*, 32 Utah 205; 89 Pac. 722.

Judgment for plaintiff. Defendant appeals.

AFFIRMED.

*Dan B. Shields* and *Snyder & Snyder* for appellant.

*Willard Hanson* for respondent.

FRICK, J.

This was an action in tort to recover damages for personal injuries. The plaintiff, respondent in this court, after alleging the necessary matters of inducement in his complaint, in substance, alleged, that on September 12, 1912, the defendant, appellant here, negligently and carelessly unloaded a wagon of coal on a "steep mountain side," and carelessly and negligently failed and omitted to place any safeguards or barriers to prevent said coal from "rolling down said steep mountain side," and carelessly and negligently omitted taking any other precautions to keep said coal from rolling down said mountain side; that in unloading said coal it was so carelessly and negligently done that a piece thereof "rolled and bounded down said mountain side," struck the plaintiff, who lived down the mountain side and in the vicinity where the coal was being unloaded, severely injuring him. The appellant in its answer admitted "that it was engaged in unloading coal at the time and place stated in the complaint, and that the plaintiff lived in the vicinity where said coal was being unloaded." It was also admitted in the answer "that the hillside below where said coal was unloaded is steep, but (appellant) alleges that the place where said coal was unloaded is a flat place, due to a widening of the grade of the wagon road at said point, and the unloading of coal at said point in the way it was being done was not obviously or inherently dangerous." It was further admitted that said coal was "unloaded by shoveling the same out of the wagon in which it was contained" onto the ground. Appellant denied all acts of negligence, and pleaded contributory negligence on the part of respondent. Upon these issues a trial to a jury resulted in a verdict and judgment in favor of respondent. The appellant has preserved all the

evidence adduced at the trial in a proper bill of exceptions, and, among other things, now insists that the evidence is not sufficient to sustain the verdict and judgment.

The evidence produced on behalf of respondent at the trial is, substantially, as follows:   That on September 12, 1912, respondent lived with his wife in a small house in what is called a gulch in Bingham Canyon, about 200 feet distant, and down a steep incline from the point where the load of coal mentioned in the pleadings was being unloaded by one Davis, an employé of the appellant; that the coal was being unloaded at a place where appellant and others had frequently before unloaded coal for the use of those who lived in the gulch aforesaid, of whom there were quite a number of families who lived there in small houses; that the coal and other things were unloaded at the place aforesaid, for the reason that there was no way to reach the small houses by team and wagon, and hence said coal and other things were usually unloaded, that is delivered, on top of the mountain as aforesaid, and those who purchased coal would get it there and take it down the mountain to their homes.   On September 12, 1912, the exact time of day is not disclosed, the respondent and one Sabine were digging a small cellar in the rear of respondent's house.   When they were about through, and just after Sabine had left the cellar, he noticed a large piece of coal rolling down the steep incline of the mountain, which incline was shown to be from thirty-six to forty degrees.   The coal was coming fast in the direction of respondent, and Sabine shouted to him to get out of the way. Respondent dodged to get out of the way of the lump of coal, but it struck him, grazing his head and striking him on the arm, breaking it.   Respondent became unconscious from the blow, and was immediately taken into the house by his wife and Sabine.   Sabine and respondent's wife immediately (within five minutes they state) went up the trail to the top of the mountain where the coal was being unloaded and they found Davis in the wagon, in which there still was some coal left.   There was what they called a "big pile" unloaded on the ground.   Respondent's wife testified that the edge of the pile of coal was about two feet from the margin of the

highway or flat place where the coal was being unloaded, that is about two feet from the brink of the steep incline of the mountain. Both Sabine and respondent's wife testified that there was no barrier or protection of any kind placed around the edge of the road where the coal was thrown from the wagon to prevent any pieces from rolling down the mountain side towards the houses in which the people were living in the gulch below. The lump of coal which rolled down the mountain side was produced in court and exhibited to the jury, but its size or shape is not disclosed. The only other evidence produced by the respondent related to the character and extent of his injuries and the damages sustained by him. When respondent rested appellant interposed a motion for a non-suit upon the ground, among others, that respondent had failed to establish negligence on its part. The motion was overruled, after which appellant produced some evidence to the effect that the flat place where the coal was unloaded was larger in extent or area than testified to by respondent's witnesses, and that the coal was further away from the edge or margin of the mountain brink. No explanation was offered respecting the unloading of the coal or how it happened that the piece in question passed beyond the margin of the highway and rolled down the mountain side.

Appellant contends that the court erred in overruling its motion for non-suit. In considering that question it must be remembered that appellant admitted the unloading of the coal in question. While the admission is not couched in that particular form, yet the admission is that it unloaded coal "at the time and place" stated in the complaint, and the evidence is clear that no one else unloaded or handled coal at the time and place mentioned; hence the admission is to the effect that appellant unloaded the coal in question. It is admitted, therefore, that appellant unloaded the coal by shoveling it from the wagon onto the ground near the margin of the steep mountain side, and at a place in the vicinity of which there lived a number of families in small houses, which were some 200 feet down the mountain side, and the evidence is not disputed that the

incline or slope of the mountain at that point was from thirty-six to forty degrees. If, therefore, any object, such as a stone or a piece of coal of any considerable size, the shape or form of which was round, or nearly so, were thrown to or near the margin, or where it would bound and land so near the margin of the highway on the mountain that by reason of its high specific gravity the force of gravitation would cause it to roll down the incline of the mountain, it in all probability would become a source of danger to any one who might be in its pathway. Every sane person is charged with knowledge respecting the properties of matter and the natural laws of nature. Every person who is handling objects which are affected by the law or force of gravity is charged with the knowledge that if he permits such objects to fall or to be where the force of gravity will cause them to move downward, any one who may be in the pathway of such an object, while in motion, may be injured. If, therefore, a person, where he has a right to be, is injured by such a moving object, he is not required to prove any particular act of negligence on the part of the person in whose care and under whose control the object in question was before the injury occurred, but, under such circumstances, it is sufficient that the injured person prove the facts from which negligence may be inferred. In the case at bar the respondent proved that appellant was handling a substance of high specific gravity; that it was thrown from a wagon onto the ground near the margin of a steep incline, and where, if it moved or rolled beyond the margin, the immutable laws of nature would cause it to continue to roll or move with accelerated speed and force down the mountain side, and thus might, and probably would, inflict injury upon any living being in its pathway. Then again, all men, the jury included, are bound to know that it is a universal and unchangeable law of nature that if any substance of any considerable size and specific gravity is placed at rest it will so continue until it is started in motion by some physical force or power. The inference, therefore, that Davis, who was unloading the coal, caused the piece in question to be precipitated over the edge or the margin of the mountain is not only natural and logical,

but it is one of great probative force. The jury, therefore, were not only justified in inferring or presuming that Davis in unloading the coal placed it where by the forces of nature it would roll down the mountain side, but it seems to the writer they could not well have arrived at any other logical conclusion. Being charged with knowledge that if so placed the coal would, nay, must, roll down the mountain side to a place where people were living, the jury had a right to infer that it was through the negligence of Davis that it was so placed. Where a person is working on a building, wall, or scaffold which extends any considerable height above the surface, and has in his possession and under his control tools, or other objects, which he permits to fall from the building, wall, or scaffold, by reason of which injury is inflicted on another, negligence may be inferred or presumed from the mere fact of the falling of the objects aforesaid. See *Sheridan* v. *Foley,* 58 N. J. Law 230; 33 Atl. 484; *Armbright* v. *Zion,* 108 Iowa 338; 79 N. W. 72; *Melvin* v. *Pennsylvania Steel Co.,* 180 Mass. 196; 62 N. E. 379. See, also, note to *Barnowski* v. *Helson,* 15 L. R. A. 33, where a large number of cases are collated. There is no difference in principle between objects handled on a building, wall, or scaffold and those that are thrown or placed near a precipitous or steep incline. Whatever difference there is in that regard is one of degree and not of kind. The foregoing cases, therefore, are strictly in point here.

In this case there is, however, another fact or circumstance which the jury were authorized to consider in determining whether appellant was negligent or not in the premises. The fact is uncontroverted that no effort whatever was made to prevent any stray piece of coal that might bound away from the other coal, or in some other way get near the brink of the steep incline, from going beyond it and down the mountain side. That some barrier or protection could have been placed along the edge of the road to prevent pieces of coal from going down the mountain side, and that such could have been done without practically any effort or expense, is so palpable that merely to mention the fact is sufficient. Where a dangerous condition is easily ob-

viated or rendered harmless, a failure to do one or the other may be considered in determining the question of negligence. See *Swan* v. *Railroad,* 41 Utah 518; 127 Pac. 267, where the principle is applied, and where the cases on the point are referred to. We are clearly of the opinion that the evidence was sufficient to justify a finding of negligence upon the part of appellant, and that under the circumstances the duty was cast upon it to offer some explanation of how the coal came to pass beyond the margin of the highway and down the mountain side. While, as we have pointed out, appellant offered some evidence with regard to the size or area of the place where the coal was being unloaded, it offered none whatever to explain the accident.

In view of the foregoing the court charged the jury as follows:

"You are instructed that if you should find from a preponderance of the evidence that the piece of coal which rolled down the mountain side and struck the plaintiff was a part of the coal being unloaded by the defendant at the time and place alleged in plaintiff's complaint, the rolling of such piece of coal down the steep mountain side raises a presumption of negligence on the part of the defendant, and unless you should find from all the evidence in the case that such presumption is overcome, you should find for the plaintiff."

Appellant excepted to the foregoing instruction and now insists that the court erred in so charging the jury. If what we have said respecting the inference or presumption of negligence is correct, then it follows that the court did not err in giving the charge excepted to. What we have already said, therefore, respecting the principle involved in the charge disposes of this contention.

It is also insisted that the court erred in refusing a number of requests to charge offered by appellant. It offered thirteen requests, all of which the court refused. We have carefully examined all of them, and each one contains some fault. In view of the great length of the requests just referred to we shall not set them forth here; nor would it serve any useful purpose to do so. It must suffice to say that because of the inherent defects contained in each re-

quest the court was fully justified in refusing to give any of them.

It is, however, urged that the court erred because it did not in its charge define the duty or care the law imposed upon appellant in unloading the coal at the time and place in question. Upon an examination of the court's charge we find that the contention is well founded. It is urged as error, therefore, that the court refused to give the following request:

"The defendant was only charged with the exercise of ordinary care, and where reasonable care is employed in doing a thing not itself liable or inherently likely to produce damage to others, there is no liability, although damage in fact ensues. Reasonable care does not require such protection as will absolutely prevent or render accidents impossible, nor is the doing of an act necessarily negligent because there may have been a safer method of performing it."

We do not think the court erred in refusing this request. Merely to tell the jury that one is only required to "exercise ordinary care" or "reasonable care" in "doing a thing" imparts no information to the jury. Such a charge in no way helps them in arriving at a correct result. In charging a jury it should always be kept in mind that what may be ordinary care, or reasonable care, under certain facts or conditions may not be such under other facts or conditions. "Ordinary care" is a relative term, and whether certain acts or omissions constitute ordinary care must be determined from all the facts and circumstances. Ordinary care must always measure up to the particular danger that is present and which is to be met or avoided by the exercise of care. The question to be met is, What is the standard of duty that the law imposes in view of the particular facts and circumstances? The standard is ordinarily expressed by the phrase "ordinary care" or "reasonable care," but the care, whatever it is termed, must always respond to and be commensurate with the degree of danger that is to be avoided. While the request, therefore, states an abstract legal principle, it is not at all adapted to the particular facts and circumstances of the case at bar. A charge should be adapted to the facts

and circumstances of the case on trial, and not merely embody a correct abstract legal principle. In this case the jury should have been told that it was the duty of appellant to exercise ordinary care, through its employé Davis, in unloading the coal, so as to prevent any large piece thereof from rolling down the mountain side, and if the jury, from a preponderance of the evidence, found the fact to be that appellant did not exercise ordinary care, that is, such care as men of ordinary prudence usually exercise under like or similar circumstances, either in unloading the coal or in omitting to do some act by which the coal would have been prevented from rolling down the mountain side, then the jury would be justified in finding appellant guilty of negligence. In view that the request referred to imparted no practical information to the jury we do not see how the appellant could have been prejudiced by the court's refusal to charge as requested. While it is the duty of the courts to inform the jury respecting the legal duty imposed by law upon the respective parties, yet a party who may offer a request upon a subject which is refused, cannot predicate error upon the refusal unless the request is in all respects a proper one to be given and is applicable to the facts of the case on trial.

But it is also asserted that the verdict and judgment are erroneous because Davis was not required to foresee the consequences which resulted from the piece of coal rolling down the mountain side. Counsel in that connection contend that, in order to fasten responsibility upon the party charged with negligence:

"It must appear that the result must have reasonably been foreseen by a person of reasonable care and prudence, to be the *probable consequences* of doing the particular thing in the particular way it was done."

We have had occasion to pass upon the ordinary test of liability respecting consequences flowing from a particular act. In *Stone* v. *Railroad*, 32 Utah 205; 89 Pac. 722, Mr. Justice Straup states the rule thus:

"But the test of liability is not whether, by the exercise of ordinary prudence, the defendant could or could not have foreseen

98        SUPREME  COURT  OF  UTAH.      [August

the precise form in which the injury actually resulted, but he must be held for anything which, after the injury is complete, appears to have been a natural and probable consequence of his act.  If the act is one which the party, in the exercise of ordinary care, could have anticipated as likely to result in injury, then he is liable for any injury actually resulting from it, although he could not have anticipated the particular injury which did occur."

A number of cases are there cited and reviewed in support of the doctrine.  If we apply the test outlined above, how can appellant escape liability?  It would seem that the most ordinary intelligence must have foreseen that if a stone or a large piece of coal should be permitted to roll down a steep mountain side, at the foot of which there are a number of dwellings with people living therein, injury would probably happen to some one.

The judgment is affirmed, with costs to respondent.

McCARTY, C. J., and STRAUP, J., concur.