[Civ. No. 4945. Third Appellate District.—February 23, 1934.]

ADA M. COPPOCK et al., Respondents, v. PACIFIC GAS AND ELECTRIC COMPANY (a Corporation) et al., Appellants.

Thomas J. Straub, W. H. Spaulding and Clinton F. Stanley for Appellants.

C. C. McDonald for Respondents.

PLUMMER, J.—The plaintiffs had judgment against the defendants in the sum of $4,000 for and on account of personal injuries alleged to have been suffered by the plaintiff, Ada M. Coppock, on account of the negligence of the defendants. From this judgment the defendants appeal, and also

appeal from the order of the court denying defendants' motion for a new trial. ▇ As no appeal lies from an order denying a motion for new trial, that portion of the appeal is hereby dismissed.

Three vehicles were involved in the occurrences leading up to the injury of the plaintiff Ada M. Coppock, to wit: A passenger vehicle driven by a man by the name of Beyer; a passenger vehicle driven by Mrs. Marsie Wallace; and a truck belonging to the defendant, Pacific Gas and Electric Company, a corporation, and driven by its employee, K. M. Sather.

The injuries constituting the basis of this action were suffered by Ada M. Coppock in an automobile collision occurring on the twenty-sixth day of February, 1932, on the Yolo side of the M Street bridge across the Sacramento River. The record shows that just prior to the incidents related, the draw on the M Street bridge had been opened so that a line of cars crossing the bridge, moving from the Sacramento to the Yolo side of the river on the north side of the bridge, had been stopped until the closing of the draw. The procession of cars then moved forward, and owing to some obstruction, the Beyer car, which was in the lead, suddenly stopped. The Wallace car likewise stopped. The truck driven by the defendant, Sather, for some reason did not stop, came in contact with the Wallace car, which was following the Beyer car, and by this contact, set in motion the Wallace car with considerable speed so that it collided with the rear of the Beyer car with sufficient violence to throw the plaintiff, Ada M. Coppock, who was a passenger in the Wallace car, suddenly forward and striking portions of the Wallace car, thereby inflicting injuries complained of in this action. It was on account of these injuries that the jury awarded damages.

▇ Upon this appeal it is insisted that there is no evidence showing that the truck driven by the defendant Sather came in contact with the Wallace car. This contention is based upon the fact that no one saw the truck driven by the defendant Sather, prior to the accident, and that the defendant Sather testified positively that the truck did not strike the Wallace car. The contention is also made that the physical facts corroborate the testimony of the defendant Sather. In this contention, however, the appellants'

position appears to be untenable. While the briefs in this case are elaborate, the facts are simple. All that portion of the briefs of the parties relating to inferences based upon inferences do not appear applicable to this case. There is testimony in the record sufficient to justify the jury in coming to the conclusion that the truck driven by the defendant Sather did come in contact with the Wallace car. The occupants of the Wallace car testified that they felt the bump of the truck with the rear of the car in which they were riding. The driver of the Wallace car testified that she was thrown backward by the bump, causing a temporary release of the clutch which had been released when the Wallace car had been stopped upon perceiving the stopping of the car driven by Beyer. This release of the clutch on the Wallace car precipitated it forward until it came in collision with the rear of the Beyer car. The testimony shows that the driver of the Wallace car had left it in low gear with the engine running and the clutch held out by the foot used in operating the clutch lever.

Again, there is testimony showing that the tire-rack on the rear of the Wallace car was bent or pushed up against the rear of the car. A few scratches were also upon the rear bumpers. The record does not show any injury to the front end of the truck. Thus, we have a situation where the impact of the truck with the Wallace car was sufficient to cause the temporary release of the clutch on the Wallace car, which sent it forward with sufficient speed to precipitate the plaintiff Ada M. Coppock forward at the time of the impact between the Wallace car and the Beyer car, and which resulted in the physical injuries alleged in the complaint.

The testimony also shows that the witnesses heard a crash in the rear, but that crash is explained by reason of the fact that a car driven by some Filipinos ran into the north railing of the bridge. There is also testimony in the record to the effect that the tire-rack on the Wallace car was in an undamaged condition prior to the accident related herein. That no witness testified on the part of the plaintiff that they saw the truck driven by the defendant Sather come in contact with the Wallace car, is not necessary to support the judgment. The fact that the truck was immediately behind the Wallace car after the

impact; that the tire-rack was pressed out of normal position; and that the occupants of the Wallace car felt a shock or bump coming from the rear, amply supports the conclusion that the truck then and there came in contact with the Wallace car, and there is no room for an argument of an inference being based upon an inference to support such conclusion. The facts which we have briefly summarized clearly establish the causal connection between the impact of the truck with the Wallace car and the injuries suffered by the plaintiff, Ada M. Coppock.

█ While no argument is presented by counsel as to whether it was negligence on the part of the driver of the Wallace car to leave the engine running, the shift-lever set for low gear, and the clutch held out by the (left) foot of the driver, we know by common experience that under such circumstances drivers usually keep the engine in motion in order that the car may not be stalled and the procession of cars unduly delayed. However, if we assume that the driver of the Wallace car was likewise negligent, the defendants are not thereby excused, as the proximate cause was the impact between the truck and the Wallace car. This is clearly set forth in 22 Ruling Case Law, page 134, to wit: "It is universally agreed that the mere fact that the intervention of a responsible human being can be traced between the defendant's wrongful act and the injury complained of, will not absolve him. On the contrary, the general rule is that whoever does a wrongful act is answerable for all the consequences that may ensue in the ordinary course of events, though such consequences are immediately and directly brought about by an intervening cause, if such intervening cause was set in motion by the original wrongdoer, or was in reality only a condition on or through which the negligent act operated to induce the injurious result." To the same effect is the text in 19 California Jurisprudence, pages 556–559.

The record further shows that the procession of cars was moving across the M Street bridge at a speed of from six to eight miles per hour; that the brakes on the truck driven by the defendant Sather were in good condition and the truck stopped, if going at a speed of six miles per hour, in about six feet, and if going at a speed of eight miles per hour, could be stopped in a distance of eight or nine feet.

There is testimony also to the effect that the defendant Sather, just preceding the impact of the truck with the Wallace car, was watching the Beyer car immediately in front of the Wallace car. After the collision the defendant Sather got out of the truck and came up to the occupants of the Wallace car.

Appellants call our attention to the fact that the owner of the Wallace car paid the owner of the Beyer car for the damages suffered to his car. This, however, though stressed in the briefs, seems to us unimportant, as the owner of the Wallace car might be liable to the owner of the Beyer car without in any manner whatsoever relieving the defendants from their responsibility to the plaintiff in this action, as the negligence, if there was negligence on the part of the driver of the Wallace car, as we have shown, does not constitute any defense to this action.

Another item of testimony from which the jury had a right to draw the conclusion that the injury to the plaintiff Ada M. Coppock was proximately caused by the impact of the truck with the Wallace car, is that the record shows the Wallace car stopped at approximately fifteen feet from the Beyer car, and that after the collision of the Wallace car with the Beyer car, the truck was distant from the Wallace car only about six feet, which shows that the truck, in order to impel the Wallace car forward a distance of fifteen feet, traveled some distance forward after its impact with the Wallace car. Otherwise stated: If the truck had stopped immediately upon the stoppage of the Beyer car, and the Wallace car had gone forward without being struck by the truck, there would have been a distance of several more feet between the truck and the Wallace car, plainly contradicting the testimony of the driver of the truck.

The law is very well established in this state that jurors are entitled to accept the solution of the circumstances which appears to them to be correct, irrespective of the positive statement of some witnesses. (*Barnham* v. *Widing*, 210 Cal. 206 [291 Pac. 173]; *Chalmers* v. *Hawkins*, 78 Cal. 733 [248 Pac. 727].) A search of the record likewise discloses that the plaintiff, Ada M. Coppock, had no control over the driver of the car in which she was riding as a guest.

█ We do not need to cite authorities that where there is sufficient testimony in the record to support the verdict of the jury, an appellate court will not interfere or direct a reversal because a different conclusion might be reached, or because there is testimony to the contrary. This is true even though the conclusion reached by the jury is based upon the circumstances surrounding the case, and not upon the direct testimony of any witness. This is supported by the cases already cited. If there is any testimony in the record supporting the verdict, and the jury accept such testimony as true, appellate courts are bound thereby. Citations of authorities to support this statement we deem unnecessary. We may, however, refer to the case of *Estate of Russell,* 189 Cal. 759 [210 Pac. 249]. See, also, *Wilson* v. *Kestenholz,* 113 Cal. App. 13 [297 Pac. 954].

█ The testimony of the defendant Sather is to the effect that he was about fifteen feet behind the Wallace car when he saw the Beyer car stop, which is in direct conflict with what we have said with regard to the testimony showing the position of the truck after the collision between the Wallace car and the Beyer car, indicating that the jury very properly was authorized to disregard the statement of the driver of the truck.

The testimony is to the effect that the brakes on the truck were in good condition, and had been recently inspected, which brings this case practically within the rule stated in *DeTemple* v. *Schafer Bros. Logging Co.,* 169 Wash. 102 [13 Pac. (2d) 446], where the court said: "It is a matter of common knowledge that an automobile equipped with good brakes, and traveling from 6 to 8 miles per hour can be stopped in considerably less than 15 feet." In subdivision "A" of section 94 of the California Vehicle Act of 1931, the legal distance for stopping a truck traveling at ten miles an hour is twelve and five-tenths feet. In this particular we may say we think it is common knowledge that every addition of mileage to the speed, considerably increases the distance required for stopping the car, from which it follows, if the truck was only making a speed of from six to eight miles an hour, it could have been stopped in a much shorter distance than when traveling at ten miles an hour.

The question then presents itself: Was the driver of the truck guilty of negligence? Subdivision "A" of section 127 of the California Vehicle Act reads: "The driver of a motor vehicle shall not follow any vehicle more closely than is reasonable and prudent, having due regard to the speed of such vehicles and the traffic upon the condition of the highway." Whether the driver of the truck was following the Wallace car more closely than was reasonably prudent under the circumstances was a question for the jury. It was also a question for the jury as to whether the driver of the truck, by exercising reasonable diligence, might have perceived that the Wallace car had been stopped, and likewise brought the truck to a standstill before its impact with the Wallace car. The fact that the cars were moving slowly; the fact that the truck was equipped with efficient brakes; the fact that the circumstances were such as to require constant vigilance on the part of every motor vehicle driver at the time in question, were all questions of fact to be taken into consideration by the jury in determining whether the driver of the truck was or was not guilty of negligence.

We think the testimony in the record shows that the jury was amply justified in drawing the following conclusions: That if the driver of the truck had been following the Wallace car at a reasonably safe distance, had been paying attention to the movements of the Wallace car, he could, by reasonable diligence, have stopped his truck before it collided with the Wallace car. Also, that the circumstances justify the conclusion that the driver of the truck was following the Wallace car other than at a safe distance; also, that he was inattentive in observing the movements of the Wallace car, and that he did not diligently or properly apply the brakes with which the truck was equipped.

As stated in 19 California Jurisprudence, page 719, negligence is a relative term, and must always be applied to the circumstances upon which it is sought to be predicated, and in arriving at its conclusion, the jury had a right to take into consideration all the testimony introduced in the case, and determine what should be accepted and what rejected. (45 C. J. 1261.)

The jury in this case, from the circumstances disclosed by the record, was entitled to draw the inference of negli-

gence, not, as claimed by the appellants, an inference based upon an inference, but an inference from the circumstances which we have hereinbefore set forth. (19 Cal. Jur. 719, sec. 133.) And if the circumstances justify such an inference, an appellate court has no jurisdiction to interfere with the action of a jury.

■ Complaint is likewise made of misconduct on the part of the attorney for the plaintiff in his argument to the jury, in the use of the following language: "If somebody came in and laid down a large sum of money before this happened to you, and said to you, 'Now, Bill (or whatever your name is), I am going to hit you a severe blow on top of the nose;' also, if somebody comes along and crushes your nose in and breaks the bone, and your face is all swollen up—you would feel that you were entitled to some compensation." The whole argument of counsel for the respondent is not called to our attention, nor is the argument of counsel for the defendants included in the record, but it is clearly evident that the remarks of counsel for the plaintiff were in refutation of a claim by the appellants that the plaintiff was not entitled to compensation. It may be said in this connection that the court instructed the jury that they were to find a verdict only upon the testimony that was introduced, and not upon remarks of counsel. While apparently this language is used as an illustration, the record shows that the plaintiff, Ada M. Coppock, received a severe blow upon the nose; that one of the bones of the nose was either cracked or broken; and that as a result, her face was badly swollen; and that subsequently to the going down of the swelling, an operation had to be performed upon the broken portion of the nose, from which it necessarily follows that if the negligence of the driver of the truck was the inducing cause of the injuries mentioned, Ada M. Coppock certainly became, was and is entitled to compensation.

The motion for a new trial in this case assigned, among other grounds, passion and prejudice on the part of the jury. This motion having been denied, unless it is made to appear that some prejudice has been suffered, the conclusion reached by the trial court will not be disturbed. (*Coursault* v. *Schwebel,* 118 Cal. App. 259 [5 Pac. (2d) 77].)

Again, unless it appears that the language used has been such as to cause a miscarriage of justice, or such as to prevent the party from having a fair trial, reversal will not be ordered. (*Robinson* v. *Western States Gas Co.,* 184 Cal. 401 [194 Pac. 39].)

Was the verdict excessive? The fact that the trial court might have been justified in reducing the verdict somewhat, or the fact that this court in the first instance might have awarded a lesser sum, does not justify reversal. It is only when the damages are so exorbitant as to suggest passion or prejudice on the part of the jury that a reduction is warranted. This has been decided so frequently that citation of authorities seems unnecessary.

The injury suffered by the plaintiff Ada M. Coppock caused considerable pain. The testimony of Dr. Tillotson is as follows: "She showed evidence of a fracture of the nose and I checked my examination with the X-ray which showed a fracture of the nasal bone, and she also showed a deflection of the nasal septum, which is the partition between the two sides of the nose, which was apparently secondary to this blow she had received on the nose. I checked over the position of the bone, etc., and told her that in about six weeks following the subsidence of the swelling, etc., of the tissues, and after the fracture had healed, I thought it advisable to correct this deflected septum, and, accordingly, she came back to me in April and that work was done under a local anesthetic. The operation consisted essentially of removing the deflected cartilage and bony portion of the septum, the septum being the partition between the two nasal passages." In answer to a question as to whether the operation was major or minor, the doctor answered: "You can consider it minor or major. If you had it yourself, you would probably consider it major."

The plaintiff Ada M. Coppock, testified that her face was badly swollen for about two weeks; that her eyes were almost swollen shut, and her whole head bruised; that she also suffered some injury in her right hip, and also some trouble in the back.

There being nothing in the record sufficient to warrant the conclusion that the damages allowed were the result of passion or prejudice, the mere fact that the trial court and the jury allowed a somewhat larger sum than this court

would have been inclined to award in the first instance lays no foundation for a lessening of the amount of the judgment.

Complaint is made by the appellants that the court erred in giving the jury the following instruction: "The court instructs you that the failure of any person to perform a duty imposed upon him by statute is negligence in itself. Therefore, should you find that the defendant, K. M. Sather, immediately prior to and at the time of the collision referred to in the complaint, violated the provisions of Subdivision 'A' of Section 127 of the California Vehicle Act while operating the motor vehicle of the defendant, Pacific Gas and Electric Company, by following the vehicle, in which the plaintiff, Ada M. Coppock, was riding, more closely than was reasonable and prudent, having due regard to the speed of such vehicles and the traffic upon the condition of the highway upon which said cars were traveling, his conduct in so doing would constitute negligence." The contention of the appellants being that there was no evidence in the record to support such instruction. A reference to what we have heretofore said in this opinion shows a conclusive answer to the appellants' contention. The jury had a right to conclude from the circumstances disclosed, that the driver of the truck was following the Wallace car too closely, and that he did not keep at a reasonably prudent distance therefrom, and likewise, as we have shown, did not exercise proper diligence.

Complaint is also made of an instruction in substance, that if one fails to see what he should have seen or hear what he should have heard by the exercise of ordinary care, a conclusion of negligence is warranted.

The facts disclosed by the record show beyond controversy that the driver of the truck should have seen that the Wallace car was stopped, and if he failed to look or to take reasonable care to observe the movements of the car which he was following, under the circumstances a basis is laid for the conclusion of negligence.

Where a number of cars are following each other in close formation, and the traffic is being obstructed and the procession of cars halted at intervals, the care required of each driver is commensurate with such circumstances, and each driver must be reasonably careful to observe the movements

of the car he is following, and to keep his own vehicle under control. The record, we think, justified the jury in coming to the conclusion that the driver of the truck did not observe these requirements. We have not set out the testimony, as it would unduly lengthen this opinion, but have simply stated the facts which the record shows that the jury was justified in considering as established, and the conclusions properly to be drawn therefrom.

The judgment is affirmed.

Pullen, P. J., and Thompson, J., concurred.