263 P.2d 287

**HILLYARD**

v.

**UTAH BY-PRODUCTS CO.**

No. 7502.

Supreme Court of Utah.

Nov. 12, 1953.

Ray, Quinney & Nebeker, Grant C. Aadnesen, Salt Lake City, for appellant.

Mark K. Boyle, Glen C. Hanni, Salt Lake City, for respondent.

CROCKETT, Justice.

Robert Reif, plaintiff's son, was killed when the car in which he was riding as a guest crashed into the rear of defendant's truck which was parked with its rear end protruding out onto the highway. From a jury verdict and judgment in favor of the plaintiff, defendant appeals.

Defendant's assaults upon the judgment form a not unfamiliar pattern:

1. That the deceased was guilty of negligence which contributed to cause his own death;

2. That the deceased's host driver was negligent which was the sole proximate cause of the collision;

3. That there was insufficient evidence that the defendant's conduct was negligent or that it proximately caused the death;

4. That the court erred in certain instructions to the jury.

In surveying the evidence, wherever there is conflict, we of course view it in the light most favorable to the plaintiff.[1]

Ronald I. Moore, in the course of his employment as truck driver for the defendant company, on the afternoon of April 20, 1949, drove its truck eastward on 27th South Street in Salt Lake City and parked it in front of his home at 480 East 27th South Street. That street is well traveled, arterial, has a surfaced portion 24 feet wide; south of the surfacing the shoulder extends 7 feet to a rock-lined ditch about 18 inches wide. Although there is a nine-foot driveway on the east side of Moore's house where he could have parked, he parked the truck on the street diagonally, with the right front wheel even with his mailbox post and so that its rear end extended 5 feet out onto the paved portion. This left only a 7 foot channel for east bound traffic using the south half of the highway.

That day Robert Reif had been working at a used car lot on State Street; Vaughn Aston had waited around for him, whiling away the time listening to the radio. They lunched together; with it each had a bottle

1. Toomer's Estate v. Union Pac. R. Co., Utah, 239 P.2d 163.

146

of beer. About 4 p. m. Reif got into Aston's car with him. They each then had another bottle of beer which they opened and were drinking as they proceeded up eastward on 27th South. Aston passed one car at about 35 miles per hour (the prescribed speed limit was 25) and continued to accelerate to about 50 miles per hour, passing two other cars. As he attempted to pass a third car, he saw he would be unable to do so because of traffic coming toward the west, so he swung to his right behind this third car; just as he did so, it turned to its left to avoid the parked truck, the Aston car crashed into the left rear end of the truck which was extending out onto the pavement. The impact pushed the truck about 50 feet easterly; Robert Reif was killed in the crash.

■ Defendant's argument that the deceased was guilty of contributory negligence is based on the contention that he should have made some protest or outcry and that, having failed to do so, he acquiesced in the obviously negligent conduct of Aston. Neither reason, nor the authorities cited by the defendant in support of its claim indicate that there is any set pattern as to when a guest should make protest or outcry or attempt to assist in the operation and control of an automobile. Ordinarily he has the right to place some reliance upon the prudence, care and skillfullness of the driver. It is only when the

guest knows, or in the exercise of ordinary care should know that the driver lacked such qualities, or is being careless that it becomes the guest's duty to consider doing something about the operation of the car. In the Esernia [2] case cited by defendant, where such duty was recognized, the passengers were fully aware of the sleepy condition of the driver; he had already run off the road once and had stated that he was so sleepy that he didn't know whether he could keep awake, after which there had been ample opportunity to leave the truck. Likewise in the case of Maybee v. Maybee,[3] the plaintiff, whose mother was the driver knew of her mother's nearsightedness and that she was driving without glasses; so she was fully aware of the serious defect in her mother's ability to drive safely, yet she acquiesced in the situation and abandoned the care of the car to her mother to such an extent that she was content to read a book during the drive.

■ Other authorities cited are not inconsistent with the principle that it is only when a guest is aware of danger for sufficient time to give a warning and reason would dictate that he do so that due care would require that he utter a protest. Prudence would not always dictate that he do so when a driver suddenly becomes reckless. It might actually distract, annoy or even vex a reckless driver, thus adding to rather than detracting from the danger of the sit-

2. Esernia v. Overland Moving Co., 115 Utah 519, 206 P.2d 621.

3. 79 Utah 585, 11 P.2d 973.

uation. Unless the matter is so clear that reasonable minds could not differ thereon, it would be a question for the jury whether an ordinary reasonable and prudent person under the circumstances would vocally object to the driving. Here there is no indication that Robert Reif knew Aston had any disability or predisposition to carelessness before this incident; it cannot be said as a matter of law that his failure to make an outcry or protest rendered him guilty of negligence. The question was properly submitted to the jury and the verdict indicates that they did not find him lacking in due care in that regard.

From the facts shown as to the manner in which deceased's host driver Aston operated his car, passing the cars at 50 miles per hour in a 25 mile zone with a bottle of beer in one hand, there is no doubt that there was sufficient evidence to make a jury question both as to his negligence, and as to whether it was a proximate cause of the collision. This, however, does not preclude the defendant from also being held responsible. It has frequently been recognized that more than one separate act of negligence, even though they do not happen simultaneously, may be proximate causes of an injury.[4]

The question of critical importance and interest here is: must it be said as a matter of law that the negligence of Aston just adverted to, was the *sole* proximate cause of the collision and death; or was the parking of the truck on the highway by Ronald Moore a negligent act which was also a concurring proximate cause?

In addressing the question whether the parking of the truck on the highway was an act of negligence, it should be remembered that an act is not necessarily rendered non-negligent merely because it may be said that no injury would result to another except for some subsequent act of negligence. One is guilty of negligence when "he does such an act or omits to take such a precaution that under the circumstances present, as an ordinary prudent person, he ought reasonably to foresee that he will thereby expose the interests of another to an unreasonable risk of harm."[5] When one does so he may be held liable for resulting injuries caused by any reasonably foreseeable conduct whether it be innocent, negligent or even criminal.[6]

The parking of a vehicle upon the paved or traveled portion of a highway is generally regarded as a hazard to traffic thereon.[7] The 12 foot lane was undoubted-

4. Caperon v. Tuttle, 100 Utah 476, 116 P. 2d 402, 404, 135 A.L.R. 1399, and cases cited therein.

5. Rosenberry, C. J., in Osborne v. Montgomery, 203 Wis. 223, 234 N.W. 372; quoted in 3 Utah Law Rev. 280.

6. See James, Nature of Negligence, 3 Utah Law Rev. 275.

7. See Webb v. Smith, 176 Va. 235, 10 S.E. 2d 503, 131 A.L.R. 562 et seq., 41-6-101, U.C.A.1953.

ly made that wide so that motor vehicles, most of which are about 6 feet in width, would have a reasonable margin of safety on either side in traveling the highway. The truck infringing 5 feet thereon, leaving only 7 feet as a clear channel for eastbound traffic, amounted to a substantial obstruction of the highway, so narrowing it as to add considerably to the risk of accidents. It is not at all unlikely that cars approaching from opposite directions might reach the point simultaneously, resulting in a "squeeze" for the eastbound car with barely inches clearance on either side. From this circumstance it might well have been foreseen that a natural and probable consequence would be some mishap of the general nature as that which did occur, which is the test to be applied: "* * * the test of liability is not whether * * * the defendant could * * * have foreseen the precise form in which the injury actually resulted, but he must be held for anything which * * * appears to have been a natural and probable consequence of his act. If the act is one which [he] * * * could have anticipated as likely to result in injury, * * * although he could not have anticipated the particular injury which did occur." [8] The court was therefore justified in submitting the question of defendant's negligence in parking the truck to the jury; and the latter were warranted in finding that such negligence existed.

We now confront the defendant's further contention, that even if the finding that the parking of the truck was an act of negligence be justified, that the later occurring negligent act of Aston in running into it in broad daylight was the immediate, efficient and therefore the sole proximate cause of the injury; its position being that the circumstances shown in evidence were such that the only permissible finding would be that Aston's negligence was such an intervening act as to supersede and insulate the parking of the truck from being a substantial factor in causing the collision. It is uniformly affirmed by leading authorities that this argument would only be valid if Mr. Aston's conduct was so unusual, so out of the ordinary, so unforeseeable as to be unanticipatable from a legal point of view. Professor Bohlen has written:[9]

"The earlier of the two wrongdoers, even though his wrong has merely set the stage on which the later wrongdoer acts to the plaintiff's injury, is in most jurisdictions no longer relieved from responsibility merely because the later act of the other wrongdoer has been a means by which his own misconduct was made harmful. The test has come

8. Stone v. Union Pac. R. Co., 32 Utah 185, 205, 89 P. 715, 722. See Furkovich v. Bingham Coal and Lumber Co., 45 Utah 89, 97, 143 P. 121.

9. Bohlen, Fifty Years of Torts, 50 Harv. Law Rev. 122, 129.

to be whether the later act, which realized the harmful potentialities of the situation created by the defendant, was itself foreseeable."

In an article entitled "Culpable Intervention as Superseding Cause" Professor Eldredge states: [10]

"Suffice it to say that the decided modern trend of authority, both in England and America, has been to make the liability of the defendant turn upon whether the intervening human action was foreseeable and to hold the defendant liable where in the retrospect the intervening act did not appear to be particularly unusual or extraordinary."

The Restatement of the Law of Torts essentially expresses the same concept in a different manner: [11]

"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if:

"(a) The actor at the time of his negligent conduct should have realized that a third person might so act, or

"(b) A reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

"(c) The intervening act is a normal response to a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent."

■ The doctrine enunciated in the above quotations is based upon the proposition that one cannot excuse himself from liability arising from his negligent acts merely because the later negligence of another concurs to cause an injury, if the later act was a *legally foreseeable* event. This has also frequently been announced as the law by various courts. The Arizona Supreme Court states: [12]

"Where the author of a negligent static condition should reasonably have anticipated that the primary and active negligence which started the sequence which produced the injury might occur and that it would act together with the static condition and produce injury, even though the two acts of negligence are not concurrent, they are both

10. 86 U. of Pa.Law Rev. 121.

11. Sec. 447 (1934).

12. Salt River Valley Water Users' Association v. Cornum, 49 Ariz. 1, 63 P.2d 639, 645. For comparable pronouncements see: Coppocke v. Pacific Gas and Electric Co., 137 Cal.App. 80, 30 P.2d 549; Seith v. Commonwealth Electric Co., 241 Ill. 252, 89 N.E. 425, 24 L.R.A., N.S., 978; Medved v. Doolittle, 220 Minn. 352, 19 N.W.2d 788; Tobin v. City of Seattle, 127 Wash. 664, 221 P. 583; Butts v. Ward, 227 Wis. 387, 279 N.W. 6, 116 A.L.R. 1441.

150

proximate causes of the injury * * *."

While we find no case in which this court has considered a situation where the facts were closely similar to those herein, its pronouncements are not out of harmony with the doctrine set forth in the authorities above referred to. Ehalt v. McCarthy [13] gives recognition to the foreseeability concept, quoting with approval from Judge Sanborn's opinion in Union Pac. R. Co. v. Callaghan,[14] where he says:

"The independent intervening cause that will prevent a recovery on account of the act or omission of a wrongdoer must be a cause which interrupts the natural sequence of events, * * * prevents the natural and probable result of the original act or omission, and produces a different result, that could not have been reasonably *anticipated*. The concurrent or *succeeding negligence* of a fellow servant or a third person which does not break the sequence of events is not such a cause, and constitutes no defense for the original wrongdoer, although, in the absence of the concurrent or succeeding negligence, the accident would not have happened." (Citing cases.) Emphasis added.

In Caperon v. Tuttle [15] we reversed because the instructions did not make clear that the defendant's negligence in leaving sheep unattended crossing a highway could render him responsible to plaintiff who was injured when an automobile in which he was a passenger ran into the sheep, even though the plaintiff's host driver was also negligent.

In the case of Rollow v. Ogden City [16] it was claimed that a city fireman negligently drove a fire truck which collided with a marker or button in the intersection which was in a defective condition; that both combined, resulted in plaintiff's injury. Upon review this court held the city not responsible for the negligent driving of the fire truck because it was a governmental function, but pointed out the duty to maintain the streets in a reasonably safe condition, and remanded the case for submission to the jury on the question whether the pre-existing defective condition in the street was a concurring proximate cause of the injury. Mr. Justice Frick for the court said:

"* * * we are not unmindful of the fact that the defendant contends that, even though it were conceded that the condition in which the marker was left constituted negligence, it nevertheless was not the proximate cause of the collision * * *."

and after giving a usual definition of proximate cause further stated:

13. 104 Utah 110, 138 P.2d 639.

14. 8 Cir., 56 F. 988, 989, 993.

15. 100 Utah 476, 116 P.2d 402, 135 A.L.R. 1399.

16. 66 Utah 475, 243 P. 791, 795.

"Ordinarily the question of proximate cause is one of fact for the jury and not one of law for the court. * * *"

In applying the test of foreseeability to situations where a negligently created pre-existing condition combines with a later act of negligence causing an injury, the courts have drawn a clear-cut distinction between two classes of cases. The first situation is where one has negligently created a dangerous condition [such as parking the truck] and a later actor observed, or circumstances are such that he could not fail to observe, but negligently failed to avoid it. The second situation involves conduct of a later intervening actor who negligently failed to observe the dangerous condition until it is *too late* to avoid it. In regard to the first situation it is held as a matter of law that the later intervening act does interrupt the natural sequence of events and cut off the legal effect of the negligence of the initial actor. This is based upon the reasoning that it is not reasonably to be foreseen nor expected that one who *actually becomes cognizant* of a dangerous condition in ample time to avert injury will fail to do so.[17] On the other hand, with respect to the second situation, where the second actor fails to see the danger in time to avoid it, it is held that a jury question exists, based on the rationale that it can reasonably be anticipated that circumstances may arise wherein others may not observe the dangerous condition until too late to escape it.[18] The distinction is basically one between a situation in which the second actor has sufficient time, after being charged with knowledge of the hazard, to avoid it, and one in which the second actor negligently becomes confronted with an *emergency* situation.

A case in which there is a clear exposition of this distinction is that of Medved v. Doolittle,[19] where the court recognized the difference between the two classes of cases, quoting with approval the Supreme Court of Pennsylvania:[20]

"* * * If already at that time, by the negligence of its driver, the moving vehicle is in such a position and under such an impetus that an accident cannot be avoided, the negligence of the truck owner is as much a proximate cause of the accident as is the negligence of the driver of the car;

17. Kline v. Moyer, 325 Pa. 357, 191 A. 43, 111 A.L.R. 406.

18. Ibid.

19. 220 Minn. 352, 19 N.W.2d 788, 193; Venorick v. Revetta, 152 Pa.Super. 455, 33 A.2d 655; Coleman v. Dahl, 371 Pa. 639, 92 A.2d 678.

20. See note 17 supra. For illustrative cases see: Seith v. Commonwealth Electric Co., 241 Ill. 252, 89·N.E. 425, 24 L. R.A.,N.S., 978; Burrell Tp. v. Uncapher, 117 Pa. 353, 11 A. 619; Kline v. Moyer, 325 Pa. 357, 191 A. 43, 111 A.L.R. 406; Tobin v. City of Seattle, 127 Wash. 664, 221 P. 583.

the negligence of each has contributed to the result."

Defendant relies upon Haarstrich v. Oregon Short Line R. Co.,[21] claiming that it is directly in point and controlling here. An analysis of the facts there indicate otherwise. The court clearly implied that there would be a distinction if the facts were different, as they are here. In that case the plaintiff, a guest passenger, was injured when the automobile ran into a freight train which was *lawfully occupying* the crossing of the highway at North Salt Lake. In denying recovery this court stressed the fact that the automobile had a clear view of the train for 150 feet or more; and further emphasized that although the accident occurred at night the crossing was well lighted. It is true that it is not mentioned whether the driver actually saw the train, nonetheless, the opinion does point out the fact that there was no obstacle in the way and therefore no reason why he could not see the train in ample time to avoid it. A reading of the opinion makes manifest the clear implication that if an emergency situation had faced the driver the result might well have been different.[22]

It thus seems proper to conclude that if the evidence was such as to make mandatory a finding that the driver Aston must have seen the truck as he approached, but nevertheless ran into it, that would have been something so unusual and extraordinary as not to be reasonably foreseeable. In such instance, his negligence would have been an independent intervening cause, insulating defendant's negligence as a proximate cause and plaintiff's judgment could not be allowed to stand. If, however, the evidence is susceptible of any reasonable interpretation which would permit a finding that as Aston approached the scene, his view was so obstructed by the cars he was following and passing that at the time the third car turned to its left to miss the truck the latter loomed up before him as an emergent situation, then, even though he was negligent in getting into such a predicament, a jury question would exist as to whether the prior negligent parking of the truck was also a concurring cause.

As Aston proceeded eastward passing the two cars, they would have been between him and the truck which was on the south side of the highway; the same is true of the third car as he tried to pass it. It is true that there is substantial evidence (some tire marks and a witness) that as he swung behind the third car and over to his right he pulled his right wheels clear off the paved portion onto the south shoulder. However he was then close enough to the truck that, at the speed he was traveling, the situation

---

21. 70 Utah 552, 262 P. 100.

22. For a similar expression recognizing this distinction see the discussion of negligence by Mr. Chief Justice Wolfe in his dissenting opinion, Hansen v. Clyde, 89 Utah 31, 39 ff., 56 P.2d 1366, 104 A. L.R. 943.

confronting him could have been properly considered as one of emergency. Aston's own story renders even clearer that he was confronted with sudden peril. He said that as he passed the two cars and pulled in behind this third one it then pulled to the left to go around the truck; and

"Q. You just kept going straight ahead because you didn't see the truck, is that correct? A. Yes.";

that the right front of his car then collided with the left rear of the truck which extended out onto the highway.

From the foregoing, together with the other facts hereinabove set forth, we conclude that it cannot be said that the evidence demonstrates with any such certainty as to make mandatory a finding that Aston saw the truck before the emergency situation was upon him. Therefore under the authorities and the reasoning herein discussed, the question whether his negligence was the sole proximate cause, and whether the negligent parking of the truck was also a concurring proximate cause of the collision and death were properly submitted to the jury.

We have given attention to each of the various claims of error in the instructions to the jury, mindful however that it is our duty to disregard errors unless they are so substantial as to affect the rights of the parties or the likely outcome of the case.[23] When the instructions are considered altogether, each in the light of the others, as they must be,[24] it appears that the case was submitted to the jury in such a manner as they would correctly understand the issues, and without any substantial error prejudicial to the defendant.

Affirmed; costs to respondent.

WOLFE, C. J., and McDONOUGH and WADE, JJ., concur.

HENRIOD, J., concurs in the result.

---

23. Startin v. Madsen, Utah, 237 P.2d 834; U.R.C.P. 61.

24. Ibid.