Lisa WATTERS, Plaintiff and Appellant,

v.

Clayton N. QUERRY, Jean C. Querry, Charles L. Querry, Elizabeth Hemingway and David E. Hemingway, Defendants and Respondents.

No. 15454.

Supreme Court of Utah.

Dec. 11, 1978.

Samuel King, of King & Hawkes, Salt Lake City, for plaintiff and appellant.

A. Alma Nelson, Philip R. Fishler, Gary A. Frank, Salt Lake City, for defendants and respondents.

CROCKETT, Justice:

Plaintiff Lisa Watters sued defendants Querry, whose car had rearended her car, and defendant Elizabeth Hemingway, who had abruptly stopped her car in front of plaintiff's. Plaintiff settled with Querry. From a failure to obtain a jury verdict against Hemingway, she appeals, assigning errors in exclusion of evidence and in instructions to the jury.

At about 10:00 p. m. on February 26, 1976, defendant Elizabeth Hemingway[1] turned her car north onto 7th East Street from Elgin Avenue (about 2950 South in Salt Lake City). She accelerated to the speed of traffic flow (about 50 m. p. h.) while she was moving to her left from the extreme outside (easterly) lane to the inside (against the highway divider) lane. After thus proceeding northward about 600 feet to a break in the divider, she made a sudden stop to await an opportunity to make a left turn. Plaintiff Watters, immediately following Hemingway, managed to stop without contact. But the next following car, whose driver, defendant Clayton Querry, was admittedly inattentive, ran into the back of plaintiff Watters' car resulting in injury to plaintiff and damage to her car.

After the Querrys settled with Watters, the matter was tried and submitted to a jury for determination of the culpability of each of the drivers under our comparative negligence statute.[2] In response to interrogatories, the jury found that the operative negligence was 85 percent defendant Querry's and 15 percent plaintiff Watters'. It also answered that defendant Hemingway was negligent in making too abrupt a stop, but that her negligence was not a proximate cause of the collision nor of the injury to plaintiff Watters.

■ The plaintiff's claim of error in exclusion of evidence relates to a statement made by the defendant Hemingway about an hour after the accident. In visiting with a friend and talking about the accident, she seemed somewhat upset and distressed and stated as a reason therefor that she "felt like she was the cause" of the accident. The objection to testimony about the statement was that it was too remote to be res gestae, that it was hearsay, and that it was of "the ultimate fact to be determined." We are not aware of any rule or reason for excluding such a statement because it may relate to the ultimate fact to be determined.[3] Neither would the statement be excludible on the ground that it is hearsay. Defendant Hemingway was a party who allegedly made what would be an admission against interest and thus competent evidence;[4] and moreover she was available both to testify and be subject to cross-examination with respect to such statement. It is our opinion that the objection was improperly sustained.

■ The instruction of which plaintiff complains reads, in pertinent part:

If a driver creates a dangerous condition with a motor vehicle, but this condition is such that another driver, exercising reasonable care, should have observed and avoided the dangerous condition, then the negligence of the later driver is an independent intervening cause, and, *therefore the first driver cannot be a proximate cause of the collision.*

The plaintiff took an explanatory exception to the instruction, asserting that it was not a proper statement about proximate cause and was in conflict with other instructions. The instruction is not necessarily incorrect as a general statement of a rule if applied

---

1. David E. Hemingway is a defendant only because he is Elizabeth's father and a signator on her driver's license. "Hemingway" refers to Elizabeth.

2. 78–27–37, 38, U.C.A., 1953 as amended.

3. Rule 56(4), Utah Rules of Evidence specifically so states; Cf. *In re Baxter's Estate,* 16 Utah 2d 284, 399 P.2d 442. Wigmore on Evidence (Chadbourn Revision, 1972) Section 1053.

4. Rule 63(7), Utah Rules of Evidence.

in appropriate circumstances.[5] It is usually true that a person who is exercising reasonable care may assume that others will also do so, and may rely upon that assumption until something appears to warn him to the contrary. But that is not always true.

The more fundamental test is whether under the particular circumstances he should have foreseen that his conduct would have exposed others to an unreasonable risk of harm; and this includes situations where negligent or other wrongful conduct of others should reasonably be anticipated. This is the view expressed by the eminent authority, Professor Prosser. In his discussion of intervening causes, he makes this statement:

The risk created by the defendant *may include the intervention of the foreseeable negligence of others* . . . the standard of reasonable care may require the defendant to protect the plaintiff against 'that occasioned negligence which is one of the ordinary incidents of human life and therefore to be anticipated.'[6] [All emphasis herein added.]

The difficulty with the instruction about which plaintiff complains is that, as applied to the instant situation, it would seem to exculpate defendant Hemingway (who created a dangerous situation) if it is found that the defendant Querry (the later actor) was negligent, whether or not the latter's conduct was foreseeable. If the principle of law just discussed is properly applied to the evidence in this case, it appears to us that there is a legitimate question as to whether a jury could reasonably find that defendant Hemingway, in making the alleged abrupt stop, should have foreseen that, in traffic such as there was on that highway, some momentarily inattentive driver following her would not be able to react and brake quick enough to avoid collision with her car or the car behind hers. The instructions should have presented that problem to the jury as contended by the plaintiff.

The fact that other instructions were given inconsistent with the one in question and consistent with the law cannot properly be regarded as curing the misconception the jury might have formed from the erroneous instruction complained of. The jurors would not know which instruction was correct and which one was in error and thus would simply be in the position of not knowing which instruction to follow; and neither the parties nor the court would know which they did follow.[7]

Because of the errors in the exclusion of evidence and instructions to the jury as discussed herein, we cannot conclude with any degree of assurance that there may not have been a result more favorable to the appellant in the absence of those errors.

Judgment vacated and the cause remanded for a new trial. Costs to plaintiff (appellant).

MAUGHAN and WILKINS, JJ., concur.

HALL, Justice (dissenting).

I cannot agree that any prejudicial error occurred below.

Specifically in regard to the trial court's refusal to allow in evidence respondent Hemingway's extra-judicial statement to the effect that "she *felt* like she was the cause of an accident," such was within its prerogative as recognized by Rule 45, Utah Rules of Evidence, which reads in part as follows:

. . . the judge may in his discretion exclude evidence if he finds that its probative value is substantially outweighed by the risk that its admission will . . (b) create substantial danger of undue prejudice or of confusing issues or of misleading the jury, . . ..

The very purpose of said Rule 45 is to place the trial judge in control over the

---

5. See *Hillyard v. Utah By-Products Co.*, 1 Utah 2d 143, 263 P.2d 287 for extended discussion.

6. Prosser, Law of Torts, 4th Ed., p. 275.

7. That where instructions are inconsistent or contradictory their use may be considered as prejudicial, see *Ivie v. Richardson*, 9 Utah 2d 5, 336 P.2d 781 (1959); *Hall v. Corporation of Catholic Archbishop of Seattle*, 80 Wash.2d 797, 498 P.2d 844 (1972).

admission of evidence, and where, *in his opinion*, the danger of prejudicial influence upon the jury outweighs its probative value, it is entirely proper for him to exclude it. Such was the case in this instance and the trial judge did not exceed his authority, nor did he abuse his discretion. Consequently, this Court should not substitute its judgment for his.

The subjective nature of the excluded statement ("I *felt*") was alone sufficient to warrant its exclusion. In a case such as this, the fact-finding function does not concern itself with the *subjective* mind processes of a witness and his "feelings" are not the proper subject of exploration. To the contrary, the fact-finder concerns itself with the *objective* evidence which in this case was extensive as to Hemingway's driving pattern and from which the jury in fact found that it constituted negligence. On the other hand, there was also adequate evidence presented to support the jury's conclusion that such negligence was not the proximate cause of the accident.

Turning now to the propriety of the "proximate cause" instruction, the main opinion is somewhat equivocal in its comments thereon since it concedes it to be a true statement of the law but thereafter deems it not appropriate in this case since "it would seem to exculpate Hemingway . . . whether or not Querry's conduct was foreseeable." I am unable to adopt that reasoning for the following reasons.

First, when the instruction is read in its *entirety*, I am of the opinion that it properly states the law that applies to this case. The entire instruction reads as follows:

The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the result would not have occurred. It is the efficient cause—the one that necessarily sets into operation the factors that accomplish the injury.

It may operate directly or through intermediate agencies or through conditions created by such agencies.

If the continuous sequence is broken by an efficient intervening cause, then all acts occurring before the break of the continuous sequence cannot be the proximate cause. If a driver creates a dangerous condition with a motor vehicle, *but this condition is such that another driver, exercising reasonable care, should have observed and avoided the dangerous condition*, then the negligence of the later driver is an independent intervening cause, and, therefore, the first driver cannot be a proximate cause of the collision. [Emphasis added.]

The foregoing instruction finds support in instruction number 15.6, J.I.F.U.[1] and often-cited Utah cases,[2] and I am of the opinion that it properly sets forth the applicable law.

I am unable to read the said instruction as depriving the jury of its charge to determine the *reasonableness* of the actions of all of the parties, within the recognized bounds of *foreseeability*.

Secondly, the main opinion holds that it was error not to instruct the jury that Hemingway was charged with the duty of foreseeing that a "momentarily inattentive" driver such as Querry would not be able to react quickly enough to avoid a collision. The facts of this case do not support any such "momentary inattentiveness" as is evident from the following testimony elicited from appellant and which supports the jury's apportionment of 85 percent negligence on the part of Querry and 15 percent on her part:

Q. How much distance separated you from Miss Hemingway when you first saw her?

A. Probably about 150 meters.

\* \* \* \* \* \*

Q. So it would be more like 160 yards away?

1. Jury Instruction Forms, Utah, 1957.

2. *Hillyard v. Utah By-Products Co.*, 1 Utah 2d 143, 263 P.2d 287 (1953); *Anderson v. Parson*

*Red-E-Mix Paving Co.*, 24 Utah 2d 128, 467 P.2d 45 (1970).

A. Yeah.

\*   \*   \*   \*   \*   \*

Q. And do you have an estimate as to how fast she was traveling?

"A. She was going awfully slow into my lane. I called it creeping, so that is pretty slow.

\*   \*   \*   \*   \*   \*

Q. Were you able to see the taillights on her car?

A. Yes, I was.

Q. You never had any trouble observing her that night?

A. Oh, no. I saw her.

Q. The visibility was clear, wasn't it?

A. Yes, it was.

Q. It was a nice clear night?

A. Yes.

\*   \*   \*   \*   \*   \*

Q. And you were overtaking her, isn't that right?

A. I was catching up to her, yes.

Q. And she was in your lane?

A. Yes.

\*   \*   \*   \*   \*   \*

Q. And then she put on her brakes and started to slow down again?

A. Right.

\*   \*   \*   \*   \*   \*

Q. . . . Could you see beyond the right rear corner of your car?

A. No.

Q. So you didn't know if there were any cars behind you, behind the right rear corner of your car coming up?

A. There was one right next to me, so I didn't have to look any further.

Q. How fast was that car traveling?

A. Faster than I was.

\*   \*   \*   \*   \*   \*

Q. And so you were coming up behind her and saw her brake lights go on, and that was about at a point where you were 110 yards behind her. Is that right?

A. Yes. That is right.

Q. And at that time you put on your brakes?

A. A little bit.

\*   \*   \*   \*   \*   \*

Q. From that point on did she at any time accelerate?

A. No. I don't think so.

Q. Was her speed decreasing?

A. I couldn't notice that.

Q. Were you overtaking her?

A. I was coming closer.

\*   \*   \*   \*   \*   \*

Q. Okay. Did you have any difficulty in stopping?

A. Well, I braked so hard that it pulled my car a bit to the right. I did have power brakes. Yeah, I would say it is [sic] difficulty in stopping.

Q. When was it that you first saw Mr. Querry?

A. When I slammed on my brakes, at the very same time I glanced in my rearview mirror, I saw the lights coming toward me. And I knew I was in for it.

It is evident from the foregoing that appellant negligently failed to reduce her speed as was dictated by the conditions existing. She was then forced to come to an abrupt stop in order to avoid a collision which in turn, combined with the negligence of Querry, was the proximate cause of the collision.

The record adequately supports the jury's conclusion that Hemingway's negligence was not the proximate cause of the collision and that instead, the combined negligence of appellant and Querry was such cause.

I would affirm.

ELLETT, C. J., concurs in the views expressed in the dissenting opinion of HALL, J.