**REDEVELOPMENT AGENCY OF SALT LAKE CITY, Plaintiff and Respondent,**

v.

**Tony R. BARRUTIA et al., Defendants and Appellants.**

No. 13360.

Supreme Court of Utah.

Aug. 29, 1974.

---

Brant H. Wall, Salt Lake City, for defendants and appellants.

B. Lloyd Poelman and H. Reese Hansen, of Strong, Poelman & Fox, Salt Lake City, for plaintiff and respondent.

CALLISTER, Chief Justice:

Plaintiff, pursuant to the power of eminent domain conferred by Sec. 11–19–23.9, U.C.A.1953, as amended 1971, initiated this action of condemnation to take defendants' property. Defendants' property was a parcel of land measuring 49 by 156 feet, situated on the east side of West Temple Street between Second and Third South in Salt Lake City. Located upon the property was a three story building with an improved basement for storage facilities. The sole factual issue in dispute was the amount that would constitute just compensation. Upon trial, the matter was submitted to a jury, which rendered a verdict finding that the fair market value for land and improvements was $93,000. The trial court rendered judgment in accordance with the verdict and denied defendants' motion for a new trial or a judgment notwithstanding the verdict in the form of an additur. Defendants appeal therefrom asserting that the trial court committed prejudicial error in regard to its rulings on the admissibility of certain evidence and certain jury instructions.

The date of the taking of the subject property was February 2, 1972. One of the landowners testified that the fair market value on the date of the taking was $165,000 to $170,000. Defendants' three expert witnesses testified as to the following as the fair market value: Memory H. Cain, $165,000; Ray Williams, $149,000; and Edward P. Westra, $87,140. Plaintiff's expert witness was of the opinion that the value of the property was $72,765. The experts were of the opinion that the building situated on the premises was obsolete and at the end of its economic life. The two upper stories of the building had been utilized as a hotel but it had been vacant since January 1971, and would require remodeling to conform with fire regulations. The basement area had been last rented in 1966. The main floor was divided into two areas. The southern portion had been rented for $125 per month as a secondhand furniture store; it had been vacant since June, 1968. The northern portion had been extensively renovated in 1967 and had been operated by the landowners as a tavern called the "Downtowner Lounge"; it had a rental value of approximately $300 per month.

The highest and best use of the property was commercial and it was so zoned. The neighborhood had undergone a dramatic revitalization by the construction of the Salt Palace Complex, which increased both pedestrian and vehicular traffic. Several new motels were being constructed in the area, and a shopping mall called "Arrow Press Square" was being completed. These new commercial enterprises stimulated an increment in the property values of the area.

On appeal, defendants contend that the trial court erred in striking the testimony of witness Cain concerning the interim value of the building on the land. The witness testified that the structure had

reached the end of its economic life and the highest and best use of the property would be to tear down the old building and construct a new type of development, such as, an office building or retail stores. The witness testified that in appraising the subject property, he had rejected the cost and income approaches and utilized the market approach which involves locating comparable sales of similar property in the area. He testified that the fair market value of the land was $153,615; this opinion was based on the sales of four parcels that he considered comparable. All of these four other properties had old buildings situated thereon, but the witness ascribed no value to the improvements; although the vendees were presently utilizing the buildings— some after extensive renovation. Witness Cain further testified that in addition to the value of the land, the willing buyer would pay a nominal value for the building. He explained that even though the building had reached the end of its economic life and was not producing sufficient income to pay the interest on the land, a buyer would pay a nominal sum since the building was producing some income to the owner, which could be collected while the plans and financing for a new structure were being completed. To determine this interim use value, Mr. Cain utilized a formula he characterized as a modified income approach.

Mr. Cain testified that the property could generate $685 per month rent, i. e., $300 for the tavern, $100 for the basement, $160 for the hotel, and $125 for the store. The sole expenses he deducted were for taxes and insurance. He did not deduct for management, vacancy and credit loss, repairs and replacement and other standard expenses. He determined a net income of $6,275 for each of the two years interim use of the building. He used the Inwood Tables to find the present use of future income. He testified that the building had a nominal value of $11,200 interim use. He explained that he could not use the stand-ard income approach, i. e., capitalized net income to determine the fair market value because the property was not being put to its highest and best use.

While the jury was not present in the courtroom, plaintiff made a motion that the testimony of witness Cain concerning the $11,200 interim use of the building be stricken. The court granted the motion and ruled that the jury would be limited to a maximum finding of value of $153,615, the amount to which witness Cain testified as to the fair market value of the property. Subsequently, the jury was never so informed or so instructed by the court. However, defendants claim the ruling of the court precluded counsel from arguing this point to the jury or from presenting further testimony concerning the value of this interim use.

The trial court did not err in its ruling. Market value is not a multiple, for the value *in use* of property for a particular purpose is not market value but merely a factor in determining such value. It is generally improper to express an opinion of value *in use* in terms of so much money. There is a clear distinction between *value in use* and market value; a given piece of land has only one market value and not a certain market value for one purpose and a different market value for another purpose. The market value of land is determined by considering the highest possible use to which the land is or reasonably may be adapted and the price which the willing purchaser would be willing to offer in view of such highest possible use. While there is a clear distinction between evidence of the value *in use* of land in terms of money for a particular purpose and opinions of market value in terms of money, based upon a consideration of the highest available use of the land of which the witness has knowledge, the evidence must be scrutinized to determine whether the testimony falls within the first or inadmissible category or the second or admissible category.[1] The testimony of witness Cain

1. Metropolitan Water District of Southern California v. Adams, 116 P.2d 7, 16–17 (Cal. 1941); 4 Nichols on Eminent Domain (3d Ed.), Sec. 12.2(2), pp. 12–80, and Sec. 12.312, pp. 12–146 to 12–149.

was inadmissible since he stated the monetary value of the land for a particular purpose; the effect thereof was not to aid in determining the market value of the property, but to add a separate item of damage.[2]

 Defendants contend that the trial court erred in admitting the testimony by means of a deposition of witness Edwin Whitney. During the course of the trial defendants' expert witness, Cain, was interrogated about the sale of a parcel of land identified as the "Weir Sale." Mr. Cain testified that he had conferred with Edwin Whitney, the manager of the property, who had advised him that the owners of the property were uninformed as to its value and didn't receive market value. Mr. Cain concluded that the Weir sale was not comparable. The Weir transaction was a key sale in plaintiff's case to establish fair market value. Mr. Whitney had suffered a serious heart attack and had been recently released from the hospital. Plaintiff moved for an order permitting the deposition of Mr. Whitney for use at trial to impeach the testimony of Mr. Cain. Mr. Whitney was advised by his doctor that he could be interviewed in the office but could not make a court appearance. Defendants objected to the deposition being taken on the ground that the Weir sale was not comparable to the subject property.

Thereafter the deposition of witness Whitney was taken and recorded simultaneously by the court reporter and a cassette recorder. Defendants had ample opportunity to conduct cross-examination. The deposition of Mr. Whitney was admitted at the trial under Rule 32(a)(3)(C), U.R.C.P., as amended 1972. The tape recording was played to the jury. The record indicates that prior to playing the cassette, counsel argued their objections to the content of the recording, that the court ruled thereon, and that it was agreed between counsel that exceptions could be dictated to the reporter while the jury was deliberating. Thereafter, defendants excepted to the ruling of the court on the ground that the admission of the testimony was highly prejudicial, was largely based on hearsay, was fraught with conclusions without adequate foundation. Defendants further claimed that the testimony as elicited did not afford or give to the landowners the opportunity to interpose appropriately the objections that would have been so interposed but for the fact that the witness was in delicate health and that their cross-examination and objections were substantially and materially hampered by the sensitive health of the witness.

There is nothing in the record to indicate that defendants were inhibited in their cross-examination of Mr. Whitney. Under Rule 32(b) and (d)(3)(A), U.R.C.P., as amended 1972, defendants asserted objections could have been made at the trial and they were not waived by failure to make them during the course of the deposition. The record does not indicate that defendants objected to the use of the cassette record, which would undoubtedly interfere with the assertion of an objection. Defendants' generalized objections directed to the entire deposition do not comport with the requirements of Rule 4(a), U.R.E., that there appear of record an objection to the evidence timely interposed and so stated as to make clear the specific ground of objection.

██ Defendants further contend that the trial court erred in admitting evidence of the "Weir Sale" on the ground that it was not a comparable sale. Defendants urge that the Weirs were acting under duress, in that they were nonresidents and had been advised by their property manager to make the sale prior to condemnation to avoid costs of litigation. Under such circumstances, defendants claim that the trial court abused its discretion in admitting such highly prejudicial evidence.

A review of the instant record indicates that there was a substantial basis in the evidence for the trial court to rule that the

2. State v. Noble, 6 Utah 2d 40, 305 P.2d 495 (1957).

test of "reasonable comparability" had been met, and the evidence was properly admitted. The differences urged and emphasized by defendants affected the weight of the evidence more than its competency and were properly submitted to the jury.[3]

■ Defendants contend that the trial court erred in giving Instruction No. 8, wherein the jury was instructed that they were not to consider interest, attorney's fees, or costs of the proceedings in assessing the value of the subject property; that these items would be dealt with by the court in accordance with the law. Defendants claim that the instruction went beyond the scope of the issues presented in the trial and constituted prejudicial error.

This instruction properly directed the attention of the jury to the sole issue they were to decide and that they were not at liberty to enhance the award by calculating any other costs. Within the context of the record of this case, this admonition to the jury was wise since defendants had emphasized the "Weir Sale" was not comparable but under duress to avoid the costs of litigation involved in a condemnation action. Furthermore, the instruction could not be considered a defect which affected the substantial rights of the parties and must therefore be considered harmless error under Rule 61, U.R.C.P.

■ Finally, defendants contend that the trial court erred by its Instruction No. 22. The record indicates that defendants excepted thereto as being contrary to the law and on the grounds that it is confusing, misleading, and does not comport with the evidence and testimony in the trial.

Rule 51, U.R.C.P., provides that in objecting to the giving of an instruction, a party must state distinctly the matter to which he objects and the grounds of his objection. The purpose of this rule is to direct the attention of the court to the claimed errors in the instruction so that he might have an opportunity to correct them if he deems it proper. The objection must be sufficiently specific to give the trial court notice of the claimed error in the instruction. An objection that an instruction is not supported by, and is contrary to the law lacks that degree of specificity so as to direct the court's attention to a particular matter. Since defendants failed to point out with the requisite degree of particularity wherein the instruction was not supported by the law, this court will not consider the instruction on its merits.[4]

■ A survey of the entire record clearly reveals that the parties had a fair opportunity to present their respective claims to the court and jury for determination. Thereafter, there is a presumption in favor of the verity of the verdict and judgment, including all aspects of the conduct of the proceedings and rulings of the court. Upon appeal, appellant has the burden of showing that there was substantial and prejudicial error which had the effect of depriving him of the opportunity of a full and fair presentation and consideration of the disputed issues.[5] No such error emerges in the instant record.

The judgment of the trial court is affirmed. Costs are awarded to plaintiff.

HENRIOD, ELLETT, CROCKETT and TUCKETT, JJ., concur.

3. State Road Commission v. Wood, 22 Utah 2d 317, 452 P.2d 872 (1969).

4. Employers Mutual Liability Insur. Co. of Wis. v. Allen Oil Company, 123 Utah 253, 263, 258 P.2d 445 (1953).

5. Redevelopment Agency of Salt Lake City v. Mitsui Investment, Inc. (Utah), 522 P.2d 1370, 1374 (1974).