James **GODESKY**, Plaintiff
and Respondent,

v.

**PROVO CITY CORPORATION, a Utah
municipal corporation, and Monticello
Investors, a Utah limited partnership,
Defendants and Appellant.**

No. 18475.

Supreme Court of Utah.

Sept. 12, 1984.

542

Stephen B. Nebeker, Paul S. Felt, Anthony B. Quinn, Richard S. Dalebout, Provo, F. Robert Bayle, Salt Lake City, for Provo City Corp.

H. James Clegg, Stephen Roth, Salt Lake City, for Monticello Investors.

Timothy C. Houpt, Salt Lake City, for Wm. Ray.

James R. Black, Susan B. Diana, C.R. Henriksen, Salt Lake City, Jeffrey A. Bogue, Denver, Colo., for plaintiff and respondent.

J. DENNIS FREDERICK, District Judge:

Plaintiff suffered personal injuries while working as part of a roofing crew in Provo, Utah. He brought suit against three defendants, one of whom was dismissed prior to trial. The jury returned a verdict against the remaining two defendants, Provo City and Monticello Investors, for approximately $1.6 million. Only Provo pursues this appeal, contending that the trial court erred (1) in applying the legal standard of superseding causation, (2) by improperly instructing the jury in several respects, and (3) by excluding certain evidence. We find no error prejudicial to defendant, and we therefore affirm.

## I. FACTS

In August of 1978, plaintiff was traveling through Provo on his way to the West Coast in search of employment as a stained-glass artist. With his money running low, plaintiff sought temporary employment. He was hired by Pride Roofing Company to work on a two- or three-day roof repair at defendant Monticello's apartment building. Plaintiff had no experience in the roofing business.

The building has a flat asphalt roof. The job consisted of removing the old asphalt and replacing it with fresh asphalt. There were two wires that cut diagonally across the corner of the building; one was three feet above the roof, and the other was nine and one-half feet above the roof and parallel to the lower wire. The first day on the job, plaintiff contacted the lower wire numerous times without incident since the wire was not charged with electricity. He did not notice the second wire. Plaintiff had no experience with electrical wires.

On the second day, the lower wire interfered with the progress of the job. One of plaintiff's supervisors told plaintiff to "tie off" the lower wire to the upper wire. A rope was thrown over the top wire, and the wire was pulled down within plaintiff's reach so that it could be lashed to the lower wire. When he grasped the top wire with both hands, he received a shock of 2,400 volts. During the course of medical care, plaintiff underwent four amputation operations, one skin graft operation, and brain surgery to relieve an abscess. At the conclusion of the operations, both of plaintiff's arms were amputated below the elbows. At the time of trial, plaintiff still suffered from loss of use and control of his left side and from pain. At trial, contrary to defendants' theory of the case, the jury determined that plaintiff was not negligent.

Defendant Provo City owned and operated the electrical system that included the wire grasped by plaintiff. The wire was uninsulated and "hot"—it carried 2,400 volts and led directly to a transformer on a pole approximately six feet from the roof. The transformer was obscured by a tree, and plaintiff testified that he never noticed it. The wire and the lower unelectrified ground wire were installed in the 1960s by Provo over the then-one-story apartment building. A second story was later added to the building, which brought the wires in close proximity to the roof. Provo admitted that it had no inspection and maintenance program, that it had not recently trimmed the tree, and that there were no warning signs anywhere in the immediate vicinity (although Provo did use such signs within blocks of this location). Provo further admitted that stringing an uninsulated high-voltage wire over a residential property was contrary to its policy. Plaintiff's expert witness testified that Provo had violated four provisions of the National Electric Safety Code; defendants' expert testi-

fied that Provo complied with the minimum height provision of that Code. The jury found that Provo was negligent and 70 percent responsible for causing the accident.

Defendant Monticello owned the building. Two of Monticello's representatives, Sanchez and Gough, hired Pride to replace the roof and inspected the roof with Pride's representative. Both Sanchez and Gough knew about the transformer. Sanchez knew that the top wire was a hot power line, and Gough watched from the ground as the top wire was pulled down within plaintiff's reach. Neither warned Pride or plaintiff about the wire. No one from Monticello requested Provo to turn off the power or to otherwise abate the dangerous condition. The jury found that Monticello was negligent and 20 percent responsible for causing the accident.

Pride was not a party in this action. According to testimony, Pride's owner, Bill Ray, noticed the wires and traced them to the nearby electrical pole. He also observed the transformer. There was no testimony that Ray knew the upper wire was electrified, but he assumed that because of its height it would pose no problem. Neither of Pride's employees supervising the job knew that the wire was electrified, but both guessed it was either a lead-in wire or a telephone wire. Both assumed it was insulated. One of the two threw the rope to plaintiff and instructed him to tie the wires together. The jury found that Pride was negligent and 10 percent responsible for causing the accident.

## II. SUPERSEDING CAUSATION

Provo first cites as error the trial court's failure to rule as a matter of law that Pride's negligence was the sole proximate cause of plaintiff's injury. Provo argues that Pride, as an experienced roofer, "knew or should have known" of the danger from the wire and that Pride had a duty not to expose its employee to a dangerous condition. Provo relies on the jury's finding that Pride was negligent and was *a* proximate cause of plaintiff's injury to support

its position that Pride was the sole proximate cause.

■■■■ Provo is correct that an employer has a duty not to expose his employees to unreasonable dangers. *See, e.g., Riggs v. Missouri-Kansas-Texas Railroad*, 211 Kan. 795, 508 P.2d 850, 854 (1973). Provo is also correct that a more recent negligent act may break the chain of causation and relieve the liability of a prior negligent actor under the proper circumstances. *See Watters v. Querry*, Utah, 626 P.2d 455 (1981) (*Watters II*); Restatement (Second) of Torts §§ 440–53 (1965). However, contrary to Provo's argument, proximate causation is generally a matter of fact to be determined by the jury. *Watters II*, 626 P.2d at 457–58. The case upon which Provo most relies, *Hillyard v. Utah By-Products Co.*, 1 Utah 2d 143, 263 P.2d 287 (1953), held that later negligence supersedes earlier negligence as a matter of law if the intervening negligent actor had actual knowledge of the danger but failed to avoid it. However, in the recent case of *Harris v. Utah Transit Authority*, Utah, 671 P.2d 217 (1983), we expressly overruled the portion of *Hillyard* that made such conduct the superseding cause as a matter of law and left the determination of relative fault (including causation) to the jury.

> [T]he unsound distinction made in *Hillyard* serves to frustrate the purpose of the Comparative Negligence Statute [U.C.A., 1953, § 78–27–37] by precluding the kind of comparison of fault that a jury ought to make. The allocation of liability should be made on the basis of the relative culpability of both parties. To do that the jury must assess the reasonableness or unreasonableness of the second [party's] actions in light of all the circumstances ....

*Harris v. Utah Transit Authority*, 671 P.2d at 222.

■■■ This is precisely what the jury did in this case. It compared the negligence of Provo, Monticello, and Pride and determined that each actor's negligence concurred to cause plaintiff's injury and that Pride's 10 percent negligence did not super-

sede Provo's 70 percent negligence as a matter of fact. The trial court acted properly when it refused to rule as a matter of law that Pride's negligence was the sole proximate cause of plaintiff's injury.

### III. JURY INSTRUCTION ON PROXIMATE CAUSE

Provo next claims that the trial court erred by refusing to give its proffered jury instruction on proximate cause. As a result, Provo was allegedly denied its opportunity to have the jury instructed on its theory of the case. Provo requested the following instructions:

> You are further instructed that Provo City Corporation's duty to the plaintiff was fulfilled and Provo City Corporation was not negligent if the plaintiff's employer knew, or, in the exercise of reasonable care as a roofer, should have known that the primary or top wire could be charged with electricity.

and:

> By "proximate cause" is meant that cause which in a natural continuous sequence, *unbroken by any new cause,* produced the injury and without which the injury would not have occurred.

(Emphasis added.)

■ The proffered instructions are not correct statements of the law. An intervening negligent act does not automatically become a superseding cause that relieves the original actor of liability. The earlier actor is charged with the foreseeable negligent acts of others. Therefore, if the intervening negligence is foreseeable, the earlier negligent act is a concurring cause. "[T]his includes situations where negligent or other wrongful conduct of others should reasonably be anticipated." *Watters v. Querry,* Utah, 588 P.2d 702, 704 (1978) (*Watters I*). *See also Harris v. Utah Transit Authority,* 671 P.2d at 219 ("[a] person's negligence is not superseded by the negligence of another if the subsequent negligence of another is foreseeable"); Prosser, *Law of Torts* 275 (4th ed. 1971).

In *Watters II,* we concluded that the jury verdict was correct because the intervening actor therein "should have observed and avoided" the danger. 626 P.2d at 458. However, the quoted language did not create a new standard for superseding causation; it merely analyzed the evidence in a light favorable to the jury verdict. The proper test is whether the subsequent negligence was foreseeable by the earlier actor.

■ The instructions given by the trial court adequately covered the issues of foreseeability and proximate causation. "[T]he court cannot be said to have failed to properly instruct the jury when requested instructions are fully covered in other instructions given." *Watters II,* 626 P.2d at 458–59; *E.A. Strout Western Realty Agency, Inc. v. W.C. Foy & Sons, Inc.,* Utah, 665 P.2d 1320, 1322–24 (1983). The jury was instructed as follows:

> One test that is helpful in determining whether or not a person was negligent is to ask and answer whether or not, if a person of ordinary prudence had been in the same situation and possessed of the same knowledge, he would have foreseen or anticipated that someone might have been injured by or as a result of his action or inaction. If such a result from such conduct would be foreseeable by a person of ordinary prudence with like knowledge and in like situation, and if the conduct reasonably could be avoided, then not to avoid it would be negligence.

> It is not necessary that the specific injury be foreseen as long as a person of ordinary prudence could foresee, as a result of his action or inaction, the possibility of some injury from contact with a live electrical line.

and:

> A proximate cause of an injury is a cause which in direct unbroken sequence produces the injury. It is one without which the injury would not have occurred.

> The law does not necessarily recognize only one proximate cause of an injury, consisting of only one factor, one act, or the conduct of only one person. To the

contrary, the acts and omissions of two or more persons may work concurrently as the efficient cause of an injury, and in such a case, each of the participating acts or omissions is regarded in law as a proximate cause and both may be held responsible.

■ While Provo's theory of the case could have been more clearly articulated to the jury, there is no basis for Provo to claim prejudice. Provo's proffered instructions were incorrect. Where a party requests instructions that are incorrect, it cannot later claim that correct instructions given are insufficiently clear. *See generally E.A. Strout Western Realty Agency, Inc. v. W.C. Foy & Sons, Inc.*, 665 P.2d at 1322.

## IV. JURY INSTRUCTION REGARDING COMPLIANCE WITH THE NATIONAL ELECTRIC SAFETY CODE

Utah Code Annotated, 1953, § 58A–3–20(2) (Supp.1983) provides that conformity of electrical installations with the National Electric Safety Code (or other approved codes) constitutes prima facie evidence that the installations are reasonably safe to persons and property.[1] Provo argues that the trial court erred when it instructed the jury that conformity with the Code "is evidence that would support the finding" that the installations were safe. It argues that § 58A–3–20(2) creates an "evidentiary presumption" of due care and that "[p]laintiff bore a heavy burden to prove that Provo City was negligent and to overcome this presumption of due care." As a result, Provo claims that it was unduly prejudiced when the court's instruction allocated an equal burden on both parties.

Provo requested the following language: Conformity of installations of electrical equipment with the applicable regulations set forth in the National Electrical Code and the National Electric Safety Code shall be prima facie evidence that

such installations are reasonably safe to persons and property.

Instead, the second and third paragraphs of the court's instruction stated:

You are instructed that conformity of installations of electrical equipment with the applicable regulation set forth in said code is evidence which would support the finding that the installations were reasonably safe to persons and property. However, the finding of a violation of any one or more of the above-cited regulations would similarly be evidence to support a finding that the installations were not reasonably safe to persons and property.

In addition to the foregoing rules you are further instructed that if you believe the circumstances of the installation of the electrical equipment are such that conformity or nonconformity with the code does not meet the standard of due care in this case, you are then to determine the issue of negligence based upon the standard of due care set forth elsewhere in these instructions.

■ Rule 51, Utah R.Civ.P., requires that when objecting to instructions, "a party must state distinctly the matter to which he objects and the grounds for his objection." Provo's counsel objected to the instruction as follows:

This defendant takes exception to the Court's Instruction No. 23 on the ground and for the reason that it is not a correct statement of the law in reference to the National Electric Safety Code, and in particularity to the third paragraph of such instruction, and as such, such instruction is prejudicial to this defendant.

This objection fails to meet the requirement of Rule 51. It incorrectly pointed to the third paragraph of the instruction, while on appeal Provo argues that the burden set out in the *second* paragraph was incorrect. More importantly, however, the objection merely stated that the instruction was "not a correct statement of the law" without

---

1. The statute was enacted after plaintiff's accident, but before the trial. In light of our holding on this issue, we need not reach plaintiff's

argument that the statute should not apply retroactively to his case.

citing the Code section it now relies upon or in any way specifying with particularity the ground for its objection. This type of general objection cannot give the trial court any notice of the substance of the claimed error or any opportunity to correct its supposed mistake. We have held that a similar objection failed to preserve the issue for appeal. In *Redevelopment Agency v. Barrutia*, Utah, 526 P.2d 47 (1974), this Court stated:

> Finally, defendants contend that the trial court erred by its Instruction No. 22. The record indicates that defendants excepted thereto as being contrary to the law and on the grounds that it is confusing, misleading, and does not comport with the evidence and testimony in the trial.

> Rule 51, U.R.C.P., provides that in objecting to the giving of an instruction, a party must state distinctly the matter to which he objects and the grounds of his objection. The purpose of this rule is to direct the attention of the court to the claimed errors in the instruction so that he might have an opportunity to correct them if he deems it proper. The objection must be sufficiently specific to give the trial court notice of the claimed error in the instruction. An objection that an instruction is not supported by, and is contrary to the law lacks that degree of specificity so as to direct the court's attention to a particular matter. Since defendants failed to point out with the requisite degree of particularity wherein the instruction was not supported by the law, this court will not consider the instruction on its merits.

526 P.2d at 51. As in *Barrutia*, Provo's objection was insufficient to preserve the issue for appeal.

 In addition, Provo's argument that § 58A-3-20(2) created a substantive presumption of due care in Provo's favor is incorrect. Prima facie evidence does not establish a presumption; it merely meets the minimum quantum of evidence necessary for a party to prevail if the evidence remains unrebutted. *See Rotramel v. Public Service Co.*, Okla., 546 P.2d 1015, 1018 (1976); 30 Am.Jur.2d *Evidence* § 1165 (1967). Prima facie evidence means only that quantum of evidence that "suffices for proof of a particular fact until the fact is contradicted by other evidence." *Lavett v. Lavett*, Ala., 414 So.2d 907, 911–12 (1982). Once the trier of fact is faced with conflicting evidence, it must weigh "the prima facie evidence with all of the other probative evidence presented." *Nocera v. Lembo*, R.I., 397 A.2d 524, 526 (1979).

Provo produced evidence that it complied with one section of the Code, and plaintiff introduced evidence that Provo had violated numerous other provisions. The evidence was thus conflicting on whether Provo complied with the Code. The instruction given by the court was a correct statement of the law and was clearer than the language proposed by Provo. We find no error.

## V. JURY INSTRUCTION REGARDING PROVO'S DUTY OF CARE

Provo next argues that the trial court erroneously instructed the jury that Provo had a duty to exercise "exceptional" care to protect persons from injury caused by its electrical system. The court instructed the jury as follows:

> The defendant, Provo City, as the operator of an electrical distribution system has under its control thereby, an instrumentality exceptionally dangerous in character and is bound to take exceptional precautions to prevent an injury being done by the instrumentality. The degree of care must be equal to the danger involved.

Provo claims that the correct standard is a "high" degree of care and that the word "exceptional" prejudicially exaggerated its degree of duty.

 It is true that this Court has stated that a distributor of electricity owes a high degree of care to protect people and property. *See, e.g., Kimiko Toma v. Utah Power & Light Co.*, 121 Utah 2d 278, 365 P.2d 788 (1961). The word "high," however, was never intended as a limitation.

As the instruction correctly stated, the degree of care must be equal to the degree of danger involved. *Miner v. Long Island Lighting Co.*, 40 N.Y.2d 372, 386 N.Y.S.2d 842, 353 N.E.2d 805 (1976).

This Court has recognized the extreme degree of danger that can be involved in the distribution of electricity. In *Brigham v. Moon Lake Electric Association*, 24 Utah 2d 292, 470 P.2d 393 (1970), this Court stated:

> A high tension transmission wire is one of the most dangerous things known to man. Not only is the current deadly, but the danger is hidden away in an innocent-looking wire ready at all times to kill or injure anyone who touches it or comes too near to it. For the average citizen there is no way of knowing whether the wire is harmless or lethal until it is too late to do anything about it. Therefore, a high degree of duty is upon one who transmits electricity in high tension wires to see that no harm befalls a person rightfully in proximity thereto when that person is himself guilty of no wrongdoing. In other words, the *highest degree of care* must be used to prevent harm from coming to others.

24 Utah 2d at 294, 470 P.2d at 395 (emphasis added).

Thus, the phrase "exceptional degree of care" that Provo extrapolates from the court's instruction must be compared with the phrase "highest degree of care" from *Moon Lake Electric Association* to determine if the instruction prejudicially exaggerated Provo's duty. The difference is one of semantics; Provo could have suffered no prejudice from the substitution of one for the other.

## VI. REFUSAL TO ADMIT PHOTOGRAPHS INTO EVIDENCE

At trial, Provo sought to introduce photographs depicting the two electrical wires over the roof of the apartment building and a measuring device showing exactly how high each wire was above the roof. The trial court sustained plaintiff's objection to the photographs. Provo claims that the trial court abused its discretion.

Even assuming that the refusal to admit the photographs was error, we are unable to see that any prejudice resulted to Provo. Utah R.Evid. 103. The evidence was cumulative. There was no dispute about the height of the wires; both parties agreed that the upper wire was more than nine and one-half feet above the roof. The evidence was clear that, in order to touch the wire, plaintiff and the other workers had to throw a rope over it and pull it down. The additional photographs could have added nothing to Provo's case.

## VII. EXCLUSION OF EXPERT WITNESS

At trial, Provo's codefendant, Monticello, sought to introduce the testimony of a roofer as an expert witness. He was to testify regarding the standard of practice or custom in the roofing industry. The trial court excluded the testimony on the basis that the witness did not qualify as an expert. Provo claims that the trial court abused its discretion.

We need not reach the issue. Whether or not it was error to exclude the witness, any error was harmless to Provo. The witness was proffered by Monticello; Provo did not join in the proffer at trial, nor did it take exception to the exclusion of the witness. One party cannot assign as error a ruling against a different party where the appealing party reserved no exception. *Johnson v. Brown*, Ala., 437 So.2d 1273 (1983); *Robinson v. Faulkner*, 163 Conn. 365, 306 A.2d 857 (1972).

The judgment of the trial court is affirmed.

HALL, C.J., and DURHAM, J., concur.

STEWART, J., concurs in the concurring opinion of HOWE, J.

ZIMMERMAN, J., does not participate herein.

J. DENNIS FREDERICK, District Judge, sat to fill a vacancy on the Court.

**549**

HOWE, Justice (concurring):

I concur except that in Part IV of the opinion of the Court, I cannot subscribe to the conclusion that Provo's objection to Instruction No. 23 failed to meet the requirements of Rule 51, Utah R.Civ.P. In my opinion, the objection adequately alerted the trial court to Provo's claim that Instruction No. 23 did not follow U.C.A., 1953, § 58A–3–20(2) which adopts by reference the provisions of the National Electric Safety Code.

In the pre-trial order prepared by plaintiff's counsel, one of plaintiff's contentions was that provisions of the NESC and § 58A–3–20 had been violated rendering Provo negligent. One of Provo's defenses enumerated in that pre-trial order was that it had complied with all applicable standards of the NESC and with the provisions of § 58A–3–20. Compliance and noncompliance with NESC were again the subjects of requested jury instructions submitted by both plaintiff and Provo. Consequently, it appears to me that the trial court was readily aware of what Provo was referring to in its objection to Instruction No. 23. Provo made its objection during the stress and pressure of the trial and should not be held to the standard of a textbook model. The objection went to the whole of the instruction and not just to the third paragraph.

However, I do not believe that it was prejudicial error to fail to instruct the jury that compliance with the NESC was prima facie evidence that an installation was reasonably safe. Since compliance does not create a substantive presumption, as the majority opinion correctly points out, the failure of the instruction to mention "prima facie" was harmless. The instruction informed the jury that compliance was "evidence which would support a finding" that the installations were reasonably safe. It would have added nothing to have instructed the jury that compliance was "prima facie evidence." Either way, the plaintiff was entitled to present evidence of noncompliance to be weighed by the jury.