**2021 UT 49**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STUART WOOD and LAURIE WOOD,
*Petitioners,*

*v.*

UNITED PARCEL SERVICE, INC.,
*Respondent.*

No. 20200052
Heard May 3, 2021
Filed August 19, 2021

On Certiorari to the Utah Court of Appeals

Third District, Salt Lake
The Honorable Matthew Bates
No. 160900437

Attorneys:

Douglas B. Cannon, Madelyn L. Blanchard, Salt Lake City,
Craig T. Jacobsen, Layton, for petitioners

Andrew M. Morse, Nathan R. Skeen, Salt Lake City, for respondent

JUSTICE PEARCE authored the opinion of the Court in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUSTICE PETERSEN joined.

JUSTICE PEARCE, opinion of the Court:

## INTRODUCTION

¶1 Stuart Wood, a truck driver, was picking up packages from a KNS International, L.L.C. (KNS) warehouse when a heavy vinyl curtain fell from the loading bay door above his head. The curtain hit Wood, causing him serious injuries. The curtain had been poorly reattached after an accident jarred it loose. The accident that jarred it loose had occurred at least a week earlier when a United Parcel Service, Inc. (UPS) truck had backed into the loading bay and struck the building.

¶2   Wood and his wife (collectively, the Woods) filed suit against KNS and UPS. The district court granted summary judgment to UPS, reasoning that UPS owed Wood no duty of care and that KNS's negligence was a superseding cause of Wood's injury. The court of appeals affirmed, concluding that UPS owed Wood no duty by the time he was injured. *Wood v. United Parcel Serv. Inc.*, 2019 UT App 168, ¶ 19, 453 P.3d 949. Because it affirmed on that issue, the court of appeals did not address whether KNS's negligence was a superseding cause. *See id.* ¶ 7 n.5.

¶3   We take a different route to the same conclusion. We conclude that summary judgment was appropriate because KNS's actions were a superseding cause of Wood's injury. We offer no opinion on the question of whether UPS owed Wood a duty when he was injured and vacate the court of appeals' holding on that topic.

## BACKGROUND

¶4   A UPS delivery truck crashed into the KNS loading dock. The collision damaged the loading dock's concrete, dislodging or loosening some of the bolts that secured a metal bracket that held a vinyl curtain in place. The vinyl curtain extended down to keep the elements out of the dock.

¶5   Tristan Barney, a KNS employee at the time of the accident, testified in a deposition that he heard the collision. Barney went to the loading dock and attempted to repair the damage by tightening some of the bolts holding the curtain and bracket in place. But he did not replace one or two of the bolts that had fallen out because he found that the "structure was compromised" and could no longer hold the bolts.

¶6   No witness could pin down exactly how much time had elapsed between the time the UPS truck hit the building and when Wood visited KNS. But Barney put it at somewhere between a week and a month. Wood testified in a deposition that, after picking up packages from KNS, he exited the building through the loading bay door. As he did, the vinyl curtain over the door, as well as its metal bracket, fell. Wood was hit on the head by the falling debris. Wood claims that he suffered severe and permanent injuries as a result of the accident.

¶7   KNS was well aware of the state of the vinyl curtain. A few hours before Wood was injured, Michael Kelly, KNS's Vice President, was driving away from the warehouse when he noticed

that the vinyl curtain was hanging down at an angle. He did nothing to address the problem because he was "running to a meeting" and "didn't think there was any danger to anyone."[1]

¶8　Stuart Wood and his wife filed a negligence lawsuit against UPS and KNS. The Woods and KNS settled, but the suit against UPS went forward. UPS moved for summary judgment. UPS argued that it was entitled to summary judgment for two reasons. UPS contended that it did not owe Wood a duty of care because it neither possessed nor controlled the KNS property. UPS also asserted that its actions were not the proximate cause of Wood's injury. The district court granted UPS's motion for summary judgment on both bases. The Woods appealed.

¶9　The court of appeals affirmed on the first ground. *Wood v. United Parcel Serv. Inc.*, 2019 UT App 168, ¶ 19, 453 P.3d 949. The court of appeals held that, "while UPS initially owed a duty to Wood because UPS's truck caused damage to the loading dock, the duty owed to invitees such as Wood shifted to KNS when it learned of and failed to adequately remedy the dangerous condition on its property that UPS created." *Id.* ¶ 10. "And without a duty owed by UPS, Wood's negligence claim against the company necessarily fails." *Id.* ¶ 18. The court of appeals therefore held that the district court correctly granted summary judgment on Wood's claims against UPS. *Id.* ¶ 19. Wood seeks certiorari review of that conclusion.

## STANDARD OF REVIEW

¶10　"On certiorari, we review the court of appeals' decision for correctness." *PC Riverview, LLC v. Xiao-Yan Cao*, 2017 UT 52, ¶ 20, 424 P.3d 162.

## ANALYSIS

¶11　The Woods ask us to overturn the court of appeals' conclusion that any duty UPS owed Wood had terminated by the time of his injury. UPS counters not only that the court of appeals was correct in concluding that it owed Wood no duty, but that we could affirm on the alternative ground that UPS's actions were not the proximate cause of Wood's injuries.

---

[1] After Wood was injured, a KNS employee told Wood that, "he was sorry, that he knew that thing was going to fall" and "[KNS] should have taken care of it."

¶12   We have the discretion to resolve a matter by affirming on an alternate ground that is apparent on the record. *See Bailey v. Bayles*, 2002 UT 58, ¶ 13, 52 P.3d 1158 ("[A]n appellate court *may* affirm the judgment appealed from 'if it is sustainable on any legal ground or theory *apparent on the record*.'" (citation omitted)) We have not always explained why an alternate ground might make an attractive path. There are a number of reasons that might cause us to affirm on a ground other than the one the appellant chooses to make her primary argument. For example, after briefing and argument, we might discover that the briefing does not give us the help that we would want to address the question. In other cases, we might foresee that we will be better positioned to address the issue in another matter. In yet other cases, we might decide that we can offer better guidance to the bench and bar if we address an alternate ground for affirmance. And, in some instances, the alternate ground might provide an option for a court that cannot coalesce around a resolution to the primary argument. Although we may not always be in a position to explain our reason for choosing the alternate ground, we assure the bar and bench that it is always the product of considerable thought and discussion.

¶13   Here, we have a viable alternate ground for affirmance. UPS argues that we should affirm the district court's grant of summary judgment because "the trial court correctly ruled that [any breach of duty by UPS] was not the proximate cause of Mr. Wood's injuries as a matter of law, because KNS's subsequent negligence was an intervening and superseding cause that cut off UPS's liability." The Woods contend that the court of appeals erred because a jury could find that Barney's repair was foreseeable and not highly extraordinary, that KNS's actions on the day the curtain fell were also foreseeable and not highly extraordinary, and because we have, on occasion, said that causation is a question best left for a jury. We agree with the Woods that often the question of whether someone else's negligence constitutes a superseding cause of a plaintiff's injury can be a fact-dependent one, but we also recognize that there are cases where a reasonable jury could only come to one conclusion on the facts before it. This is just such a case.[2]

---

[2] The court of appeals affirmed the district court because it concluded that UPS owed Wood no duty by the time he suffered his injury. *See Wood v. United Parcel Serv., Inc.*, 2019 UT App 168, ¶ 10, 453 P.3d 949. In its opinion, the court of appeals relied on, and effectively adopted, Restatement (Second) of Torts section 452(2),

(continued . . .)

¶14 "Proximate cause is 'that cause which, in natural and continuous sequence, (unbroken by an efficient intervening cause), produces the injury[,] and without which the result would not have occurred. It is the efficient cause—the one that necessarily sets in operation the factors that accomplish the injury.'" *Steffensen v. Smith's Mgmt. Corp.*, 820 P.2d 482, 486 (Utah Ct. App. 1991) (quoting *State v. Lawson*, 688 P.2d 479, 482 n.3 (Utah 1984)), *aff'd on other grounds*, 862 P.2d 1342, 1344 (Utah 1993).

¶15 "An intervening cause," a cause that interrupts proximate causation, "is an independent event, not reasonably foreseeable, that completely breaks the connection between fault and damages." *Kilpatrick v. Wiley, Rein & Fielding*, 909 P.2d 1283, 1293 (Utah Ct. App. 1996). The key words in that sentence are "reasonably foreseeable." *See id.* We have held that the negligence of another party can be an intervening cause only if "the subsequent negligence of another is [not] foreseeable." *Harris v. Utah Transit Auth.*, 671 P.2d 217, 219 (Utah 1983).

¶16 To determine whether another party's subsequent negligence is foreseeable, we have adopted the test from the Restatement (Second) of Torts:

> The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if
>> (a) the actor at the time of his negligent conduct should have realized that a third person might so act, or
>> (b) a reasonable [person] knowing the situation existing when the act of the third person was done

---

titled "Third Person's Failure to Prevent Harm." *See id.* ¶ 9. Section 452(2) posits that the duty to prevent future harm caused by a party's negligence can shift from the originally negligent party to a third person. RESTATEMENT (SECOND) OF TORTS § 452(2) (AM. L. INST. 1965). Because we vacate the court of appeals' decision, we necessarily vacate the court's adoption of section 452(2). We offer no opinion on whether the court of appeals erred in bringing that section into our jurisprudence and leave completely open the possibility that the court of appeals, or we, might adopt or reject that section in another case.

would not regard it as highly extraordinary that the third person had so acted, or

(c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent.

*Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 447 (AM. L. INST. 1965)). If any of these conditions are satisfied, then the intervening negligence is not a superseding cause because it should have been foreseeable. *Id.* Here, a reasonable jury could only conclude that KNS's negligence was not foreseeable.

¶17  According to Barney, the former KNS employee, KNS installed vinyl curtains over its loading dock doors prior to Wood's injury. The curtain that fell on Wood had been anchored to cinderblocks over the dock doors. The vinyl curtain and the bracket that held it in place weighed between 100 and 140 pounds.

¶18  One week to a month before Wood was injured, a UPS truck backed into the KNS building. The blow to the building was strong enough that the building "shook." Barney inspected the site of the crash.

¶19  Barney could see that one of the cinderblocks where the curtain was attached had cracked. Barney could also see that a "screw or two might have fallen out on the far-left side of the door if you were looking at it from the interior." These screws were "[o]ne or two of the anchors" that had been holding the vinyl curtain and its metal bracket in place over the door.

¶20  Barney did "a little bit of inspection" and "probably tightened a couple" of the remaining anchors. But he could not put the anchors that had fallen out back in, because they "wouldn't go back in the same hole." He surmised that the "structure was compromised and no longer would that particular bolt have held."

¶21  But Barney took no additional action to repair the damage.[3] According to Barney, after his fix, the vinyl curtain was hanging in

---

[3] The Woods's expert witness explained in a report that Barney's repairs were destined to "ultimate failure." He opined:

> Once some of the fasteners lost their strength, they would have passed their share of the load onto neighboring fasteners, overloading them, and given time, causing their failure. As this process continued,

(continued . . .)

its original position. Barney said that, if it had been hanging oddly, he would have immediately stopped walking under the curtain himself and prevented his employees from walking under it too.[4]

¶22   The vinyl curtain did not continue to hang correctly. On the day Wood was injured, an employee reported that "some bolts and the bracket were missing" from the vinyl sheeting. KNS took no response.

¶23   One to two hours before Wood was hurt, KNS's Vice President Michael Kelly saw that about a foot of the vinyl sheeting and bracket were hanging more than an inch out of position. Even though he had a "clear view" of the curtain and could see that it was not properly attached, he decided not to address the issue immediately. He thought that there were "a lot of bolts holding it" and that "no one . . . ever goes up there throughout the rest of the day."

¶24   Kelly was wrong. By the time he returned from his meeting, the vinyl curtain had fallen on Wood and ambulances were on the scene.

¶25   UPS argues that it was not foreseeable that KNS would fail in its duty to either repair the dangerous condition or keep people

---

the surviving fasteners would be overloaded to a greater and greater degree, thereby accelerating the failure of any remaining fasteners. Ultimately, the remaining fasteners would no longer be able to support the load, and the strip curtain would fall. Anyone competent in evaluating structural integrity would have understood the strong possibility of such a progressive march toward failure.

[4] The Woods argue that it was foreseeable that Barney would attempt to repair the damage. They contend that it was also foreseeable that he might conclude that it was adequately repaired when it wasn't. This might be true, but it ignores everything that KNS knew, did, and didn't do from that point to the time of Wood's injury. *Supra* ¶¶ 5-7. As a result, it would be error to stop the analysis at this point just because Barney started his repairs in a way that a jury might conclude was foreseeable. The same is true of the Woods's other attempts to assess foreseeability by focusing on individual parts of KNS's response and not the totality of KNS's actions.

away from the hazard until it was fixed.[5] UPS contends that this "successive carelessness was not 'a normal consequence' of any damages allegedly caused by UPS one week to one month prior." "Nor," UPS argues, "would 'a reasonable [person] knowing the situation' regard KNS's repeated failure to remedy a known hazard on its own property as anything other than 'highly extraordinary.'" We agree with UPS. KNS's intervening negligence was, applying Restatement section 447, an unforeseeable superseding cause of Wood's injuries.

¶26    The Restatement provides that intervening negligence is not a superseding cause if "the actor," UPS in this case, "at the time of his negligent conduct should have realized that a third person," here, KNS, "might so act." RESTATEMENT (SECOND) OF TORTS § 447(a) (AM. L. INST. 1965). KNS's negligence was a superseding cause because UPS "should [not] have realized" that KNS would be aware of an obvious hazard on their property and not repair it properly or take steps to keep people away from the condition until it was repaired. The Restatement also says that intervening negligence is not a superseding cause if "a reasonable [person] knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted." *Id.* § 447(b). Applying this standard, we ask if a reasonable person in general—rather than UPS in particular—would regard KNS's actions as "highly extraordinary." A reasonable person would expect that KNS, who had knowledge of the condition, the sole ability to address the condition, and time to remedy the hazard, would adequately repair the dangerous condition on its property, and that the landowner would keep people away from the danger until it was fixed. Those are the sorts of ordinary actions that responsible property owners take when there is damage to their property. Instead, KNS completed an inadequate repair of the sheeting that was doomed to fail. *See supra* ¶¶ 20, 21 & n.3. The gap between what a reasonable person would expect KNS to do and

---

[5] It is helpful to remember that something is not reasonably foreseeable just because it can be imagined. Foreseeability contains an element of predictability. Foreseeability is defined as "[t]he quality of being reasonably anticipatable." *Foreseeability*, BLACK'S LAW DICTIONARY (11th ed. 2019). Thus, just because we can imagine something does not mean that can be reasonably anticipated to occur and, therefore, foreseeable.

what KNS actually did could only lead a jury to conclude that KNS's response to the danger was "highly extraordinary."

¶27 Finally, the Restatement says that if "the intervening act" by KNS "is a normal consequence of a situation created by the actor's conduct," "and the manner in which it is done is not extraordinarily negligent" then the intervening act is not a superseding cause. RESTATEMENT (SECOND) OF TORTS § 447(c). A comment to the Restatement fleshes out what it means to be "extraordinarily negligent" in this context. "The words 'extraordinarily negligent' denote the fact that [people] of ordinary experience and reasonable judgment" would look at what occurred, take into account the "prevalence of that 'occasional negligence, which is one of the incidents of human life'" and conclude that it is extraordinary that the third person would have taken its act negligently. *Id.* § 447 cmt. e.

¶28 Here, we cannot say that KNS's "intervening act" was a "normal consequence" of the damage done to its building. Under "normal" circumstances, the property owner, given at least a week to address the situation, would repair the damage and/or keep people away from the unaddressed hazard. KNS, in contrast, performed manifestly inadequate repairs and ignored the danger of leaving the sheeting up without warning. KNS knew that it could not replace an anchor securing the structure holding the sheeting in place because the structure was "compromised." *Supra* ¶ 20. KNS knew that the sheeting weighed between 100 and 140 pounds but decided that no further repairs to the sheeting were needed even though the sheeting hung over an entrance to their building. *Supra* ¶¶ 17, 20. This is not the "normal consequence" of damage to a building but rather extraordinary negligence and, therefore, not foreseeable under the Restatement.

¶29 The Woods argue that we have previously applied foreseeability in a way that makes the grant of summary judgment inappropriate in cases like this. The Woods direct us to *Godesky v. Provo City Corp.*, where a plaintiff was seriously injured after he touched live electrical wires while working on a roofing project. 690 P.2d 541, 543 (Utah 1984). After his injury, Godesky sought recovery from his employer, the owners of the building whose roof he was repairing, and Provo City. *Id.* at 543–45.

¶30 All three defendants appeared to have had a hand in the series of unfortunate events that led to the injuries. *Id.* Godesky's employer, a roofing contractor, tasked him with removing and replacing the old asphalt from a roof. *Id.* at 543. On the second day of

the job, the lower of two wires hanging diagonally across the corner of the building impeded Godesky's work. *Id.* Godesky's supervisor told him to "tie off" the lower wire by connecting it to the upper wire. *Id.* Unbeknownst to Godesky and his supervisor, the wire was uninsulated. *Id.* When Godesky grasped the upper wire to pull it down, he received a 2,400-volt shock. *Id.*

¶31 The building owners knew the wire was "hot," but did not tell the roofing contractor about it or otherwise take steps to protect the roofers. *Id.* at 544. Nor did the owners request that Provo City turn off the electricity. *Id.*

¶32 Provo City owned and operated the wires but admitted it had no maintenance or inspection program. *Id.* at 543. It also acknowledged that it had not posted warning signs near the wire as it had done elsewhere. *Id.* Provo City also confessed that having "an uninsulated high-voltage wire over a residential property was contrary to its policy." *Id.*

¶33 At trial, the jury divvied up fault between the plaintiff's employer, the property owner, and Provo City. Provo City, who had been assigned seventy percent of the fault, appealed, arguing that the employer's more recent negligent act should relieve the City of its liability. *Id.* at 544.

¶34 We upheld the verdict and ruled that the "trial court acted properly when it refused to rule as a matter of law that [the employer's] negligence was the sole proximate cause of plaintiff's injury." *Id.* at 545. We explained,

> An intervening negligent act does not automatically become a superseding cause that relieves the original actor of liability. The earlier actor is charged with the foreseeable negligent acts of others. Therefore, if the intervening negligence is foreseeable, the earlier negligent act is a concurring cause. . . . The proper test is whether the subsequent negligence was foreseeable by the earlier actor.

*Id.*

¶35 *Godesky* does not help the Woods. Provo City had a duty to provide a safe electrical system but had no inspection or maintenance program. Nor had it installed warning signs. A reasonable jury could have concluded that it would have been foreseeable to Provo City that a person would come into contact with the "hot" wire that Provo City owned and maintained and be

injured. Summary judgment would have been inappropriate on those facts.

¶36   If anything, *Godesky* highlights why summary judgment is appropriate here. A reasonable jury could conclude that Provo City, which had the ability to correct its negligence, could foresee that someone would be injured if it didn't. But a reasonable jury could not conclude that UPS could foresee that KNS which had both the duty and the ability to address the dangerous condition on its property, would not have done so at least a week after the dangerous condition appeared. *See Rodriguez v. Kroger Co.*, 2018 UT 25, ¶ 14, 422 P.3d 815 ("The owner of a premises has a nondelegable duty to keep her premises reasonably safe for business invitees.").

¶37   The Woods also rely on *Williams v. Melby*, 699 P.2d 723 (Utah 1985). The Woods assert that we "sent the [*Williams* case] back to the jury despite the existence of facts similar to those here." Williams fell three stories from her apartment window in the middle of the night. *Williams*, 699 P.2d at 725. She sued the contractor that built her apartment and the apartment's owners. *Id.* Williams alleged that they were negligent in building and owning an unsafe structure. *Id.* In the opinion, we recited many of the features that Williams had argued made the room unsafe. *Id.* at 725-26. The building had a sloped wall which caused the window and windowsill to project into the room. *Id.* at 725. The windowsill was twenty-two inches from the floor, and the window was separate from the outside wall surface. *Id.* All of this, Williams claimed, increased the potential that a person would stumble into the sill and fall out the window. *Id.* at 725–26.

¶38   The apartment owners claimed that Williams was negligent because she placed her bed too close to the window. *Id.* at 728. And that her negligence "was an intervening proximate cause that superseded whatever cause may have flowed from their negligence." *Id.* As the Woods note, we rejected this argument, reversed the grant of summary judgment, and held that, "[t]he issue of what constitutes a superseding cause can not be determined by the simplistic formula that the cause which occurs last in time is, as a matter of law, a superseding cause." *Id.* We reversed the district court's grant of summary judgment and sent the matter back for a trial. *Id.* at 729.

¶39   We stand by the basic principle that superseding causation cannot be assessed by looking to which party's negligence was closest in time to the accident. *See id.* at 728. But *Williams*' holding reaches more broadly than that. Although we provided scant analysis of foreseeability, we held that a reasonable jury could have concluded that a contractor who builds, and a landlord who rents, a

small third-story bedroom with a sloping roof and a glass window that protrudes into the room might foresee that an occupant would place her bed close to the window.

¶40 We reasoned that "there was very little choice in the matter" of where to place the furniture "because of the size of the room and the size of the furniture." *Id.* We appear to have concluded that the size of the room meant that there were only so many ways that a person could arrange her bedroom. *See id.* And that the builder and owners could have foreseen that the room's design could cause someone to have their bed close to the dangerous window. *See id.* This allowed us to gather that a reasonable jury could conclude that an accident involving the poorly designed window would have been foreseeable to the builder and owners. As such, we found summary judgment to be inappropriate and remanded for trial. *Id.* at 729.

¶41 That is a different level of predictability than exists in this case. As explained above, UPS could not have reasonably foreseen that KNS would, for at least a week, abdicate its responsibility to adequately repair the dangerous condition on its property and to keep the public away from the hazard in the meantime. *Supra* ¶ 36. To the contrary, UPS would have expected KNS, who had knowledge of the condition and control over the damaged property to repair and keep people away from the potential danger until it had been repaired. That KNS watched the condition deteriorate and the danger increase makes its negligent response even less foreseeable. No reasonable jury could conclude that UPS could have foreseen KNS's negligence.

¶42 The Woods respond that KNS's negligence was to be expected because "people see conditions every day, even dangerous conditions, and yet they do nothing." The problem with that type of argument is that it exists at a level of generality that hides the complexity of the inquiry. We can undoubtedly foresee a situation where a "person" observes a "dangerous condition" and does "nothing." But we can just as easily predict situations where we would not be able to foresee that a person would observe a dangerous condition and do nothing. Foreseeability turns on a host of factors including who the person is, what they observe, their ability to remedy the condition, and the time they have to respond before the injury occurs. The inquiry is highly fact dependent. Addressing the issue at the level of generality the Woods propose tells us nothing.

¶43 And that segues into the Woods's final argument. The Woods cite a number of our cases where we have said that a

causation question "is generally a matter of fact to be determined by the jury." *Godesky*, 690 P.2d at 544. We agree with that truism but note that the word "generally" does a lot of work to make it true. The word "generally" recognizes that there will be exceptions to the rule, outliers that prevent us from speaking in absolutes. The question here is whether this case is one of those that fall outside the norm. For the reasons we have explained, it does. And Utah Rule of Civil Procedure 56 exists as a mechanism to permit a district court to summarily adjudicate cases where a reasonable jury could reach only one conclusion. The district court did not err when it granted summary judgment to UPS.

## CONCLUSION

¶44 No reasonable jury could have concluded that it was foreseeable that KNS, who had knowledge of the dangerous condition on its property, would have failed, after a week or more had passed, to adequately remedy the hazard or keep people away from the condition until it was repaired. KNS's negligence is therefore a superseding cause of Wood's injuries. We vacate the court of appeals' decision that UPS owed no duty to Wood, but affirm the grant of summary judgment.

———————